**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5560

DAVID A. WILSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                            No. 95-5563

DAVID WAYNE ABNER, a/k/a David
Abner,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CR-95-6)

Argued: December 2, 1996

Decided: June 16, 1997

Before RUSSELL, MICHAEL, and MOTZ, Circuit Judges.

_____

No. 95-5560 affirmed in part, reversed in part and remanded, and No.
95-5563 affirmed by published opinion. Judge Russell wrote the opin-
ion, in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Hope Dene Harris, LAW OFFICE OF HOPE DENE HARRIS, Abingdon, Virginia, for Appellant Abner; Daniel Knowlton Read, Jr., JESSEE & READ, P.D., Abingdon, Virginia, for Appellant Wilson. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Rich A. Mountcastle, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUS-TICE, Washington, D.C., for Appellee.

_____

**OPINION**

RUSSELL, Circuit Judge:

David Abner and David Wilson appeal their drug trafficking and firearm convictions on various grounds. We affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

I.

From January 29 through January 31, 1995, Clifton Laughlin, a confidential informant and personal friend of Wilson, made four controlled purchases of marijuana and firearms from Wilson and one purchase of firearms from Abner. He made the purchases at the direction of Detective Benton of the Bristol, Virginia, Police Department. During each controlled purchase, Laughlin wore a hidden wire transmitter, which enabled Detective Benton and his partner to monitor and record every conversation that Laughlin had with Abner and Wilson. After each transaction, Laughlin immediately turned over the contraband to Detective Benton.

The evidence of record shows that on January 29, Wilson sold Laughlin one ounce of marijuana on credit. Laughlin delivered the marijuana to Detective Benton, who had expressed interest in investigating Wilson's illegal drug activities because he believed Wilson to be a major marijuana distributor. On January 30, Detective Benton

2

gave Laughlin bait money to purchase more marijuana. Later that day Wilson sold Laughlin another ounce of marijuana, and also offered to sell Laughlin two guns for $300. Each gun had had its serial number obliterated. Laughlin purchased only the marijuana.

Upon hearing that Wilson also dealt in illegal firearms, Detective Benton gave Laughlin additional money to purchase the guns. When Laughlin returned to Wilson's apartment to purchase the firearms, Wilson told Laughlin that Abner had the guns. Laughlin and Abner subsequently drove to Abner's place where Abner sold Laughlin only one of the guns. During the sale, Abner bragged about having personally removed the serial numbers from the guns with a file, and he also showed Laughlin an SKS rifle that he stored in his bedroom closet.

After Laughlin delivered the gun to Detective Benton, Detective Benton directed Laughlin to attempt to purchase the other gun. Laughlin complied. Because Wilson was not home, Laughlin sought out Abner on his own. Although Abner told Laughlin that the other gun had already been sold, he offered to sell Laughlin a forty-five caliber handgun for $175 that also had an obliterated serial number. Laughlin purchased the gun and turned it over to Detective Benton.

On the evening of January 30, Detective Benton informed Special Agent Samuel Evans of the Bureau of Alcohol, Tobacco and Firearms of Wilson's and Abner's illegal conduct. With the intent to gather evidence that Wilson and Abner were violating federal laws, Agent Evans agreed to accompany Detective Benton if and when he executed search warrants of the suspects' apartments.

On January 31, Detective Benton gave Laughlin $300 to purchase more marijuana from Wilson. During negotiations for the marijuana, Wilson told Laughlin that he could supply him with as much marijuana as Laughlin wanted and that he could also sell Laughlin a twenty-two caliber semiautomatic rifle. Instead of purchasing marijuana, Laughlin purchased the rifle and a clip for the $300. Laughlin delivered the rifle and clip to Detective Benton.

Detective Benton obtained search warrants. State agents executed searches of Wilson's and Abner's apartments on January 31. Detective Benton testified that prior to executing the search warrant, he had

3

Laughlin confirm that marijuana was present in Wilson's apartment and that no children were in the residence. After receiving such confirmation, Detective Benton directed Laughlin to be present at Wilson's apartment when the agents executed the search warrant. Detective Benton also suggested to Laughlin that if Wilson permitted it, he should open the door when the agents knocked so that they would not have to knock the door down.

Laughlin testified that when the state agents knocked on the door at Wilson's home, Wilson directed Laughlin to answer the door. Before opening the door, however, Laughlin asked Wilson whether he was "going to ask who it [was]," to which Wilson replied, "No, I'm expecting somebody." Laughlin opened the door, and the agents entered the apartment. Wilson was lying on a couch right beside the door. The state agents then proceeded to search the residence.

Upstairs, in a master bedroom closet, they found one box of plastic sandwich bags, one nine millimeter round, and one box containing two bags of marijuana, and marijuana in brick form. Downstairs, the state agents seized marijuana, scales, and a pager. Although Agent Evans accompanied Detective Benton, he waited outside and did not participate in the search of Wilson's apartment. Following Wilson's arrest, the agents found $1,134 on his person, including the $300 bait money used by Laughlin. The state agents who searched Abner's apartment seized the SKS rifle.

Following a joint jury trial, Abner was sentenced to 87 months imprisonment for each of three counts of possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2); and to 60 months imprisonment for each of two counts of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) & 924(a)(1)(B). Abner is to serve all sentences concurrently.

Wilson was sentenced to 60 months imprisonment for one count of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(D); and to 60 months imprisonment for one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) & 924(a)(1)(B). Wilson is to serve these sentences concurrently. Wilson was also sentenced

4

to a term of 120 months for each of two counts of being a felon in possession of a firearm, in violation of 18 U.S.C.§§ 922(g)(1) & 924(a)(2); and 120 months for one count of possessing a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), & 5871. Wilson is also to serve these sentences concurrently. Finally, Wilson was sentenced to 120 months imprisonment for one count of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Wilson is to serve this count consecutively, with the terms imposed on his other convictions to the extent necessary to produce a total sentence of 240 months imprisonment.

## II.

First, Abner and Wilson challenge the admission of certain tape recordings of their conversations with Laughlin that took place during the drug and firearms sales. They also take issue with the jury's use of a transcript of one of the tapes. Abner and Wilson had copies of all of the tapes and the transcript before trial.

## A.

Abner and Wilson contend the Government failed to authenticate both the original tape recordings of their conversations with Laughlin and a composite tape made from the original recordings. We review a district court's admission of tape recordings for abuse of discretion.[1] We will find error only when "the foundation for admission is clearly insufficient to insure the accuracy of the recording."[2]

The Government proffered four tape-recorded conversations, which occurred between Laughlin and either Wilson or Abner, or both, over the three-day period. The district court first admitted the original recordings into evidence after Detective Benton testified, and admitted the composite tape into evidence after Agent Evans testified. But when the Government requested to play the composite tape during

_____

[1] **United States v. Capers**, 61 F.3d 1100, 1106 (4th Cir. 1995), cert. denied, 116 S. Ct. 1830 (1996).

[2] Id. (quoting United States v. Clark, 986 F.2d 65, 68 (4th Cir. 1993).

5

Laughlin's testimony, the district court reversed its earlier ruling on the admissibility of all of the tapes. It prohibited the playing of the composite tape on the basis that all of the tapes had not yet been properly authenticated. After Laughlin finished testifying, however, the district court re-admitted the original tapes and the composite tapes into evidence over Abner's and Wilson's objections and allowed the Government to play the composite tape before the jury.

The proponent of an audio recording must show that the recording was sufficiently authentic to be admitted into evidence.[3] A tape recording can be authenticated if the proponent satisfies Federal Rule of Evidence 901(b)(5), which provides that the "identification of a voice, whether heard firsthand or through mechanical. . . recording" is admissible "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." The district court has wide latitude in determining whether or not the proponent of a tape recording has adequately laid the foundation from which the jury could reasonably evaluate the accuracy, the validity, and the credibility of the contents of the recordings.[4]

We hold that the district court did not abuse its discretion by ruling that the original tape recordings had been properly authenticated because the original tape recordings were authenticated through the testimony of Detective Benton and Laughlin. Detective Benton testified that he had personally wired Laughlin with a hidden wire transmitter prior to each transaction and that he and his partner had operated and monitored the audio recording equipment while Laughlin dealt with Abner and Wilson. Detective Benton further testified to the chain of custody of the tapes by stating that after making the original recordings he placed his initials on the tapes, secured them in a file drawer in his office, and removed the tapes only to make copies for Agent Evans. Laughlin testified that he had listened to the original tapes and that they accurately recorded his conversations with Abner and Wilson.

We also hold that the district court did not abuse its discretion by

_____

**3** **United States v. Branch**, 970 F.2d 1368, 1371 (4th Cir. 1992).

**4** **Capers**, 61 F.2d at 1106.

6

ruling that the composite tape had been properly authenticated because the composite tape was authenticated through the testimony of Agent Evans and Laughlin. Agent Evans and Laughlin testified that they listened to all of the tapes and compared the original recordings to those on the composite tape. They concluded that the composite tape accurately represented the relevant portions of the conversations recorded from the four original tapes. Laughlin also testified that the composite tape accurately represented his original conversations with Abner and Wilson. Accordingly, we hold the district court did not abuse its discretion when it finally admitted all of the tapes into evidence.

B.

Abner and Wilson also claim that the district court erred in allowing the jury to use a government-prepared transcript while listening to the composite tape. They claim they were prejudiced by alleged discrepancies between the transcript and the composite tape. The district court has the discretion to permit the jury to use a transcript as a guide in following the presentation of tape recorded evidence.[5] We hold that the district court did not abuse its discretion. Laughlin and Agent Evans testified that the transcript accurately reflected the content of the composite tape. Abner and Wilson possessed copies of the transcript and had the opportunity to cross-examine the Government's witnesses about the transcript's accuracy. Furthermore, the transcript was never admitted into evidence. It was only used as a guide. Most importantly, when the jury received the transcript, the district court instructed the jury to resolve any potential conflicts between the tape and the transcript in favor of the composite tape. Hence, the district court's limiting instruction cured any potential prejudice stemming from the alleged discrepancies between the composite tape and the transcript.

III.

Next, Abner and Wilson assert that insufficient evidence exists to sustain their convictions because their convictions were predomi-

_____

[5] **Capers**, 61 F.3d 1107.

nantly based on the uncorroborated testimony of an informant.**6** When reviewing challenges to the sufficiency of the evidence, we determine whether "any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt."**7** We consider, therefore, all of the evidence in the light most favorable to the government, assuming the jury weighed all of the evidence, resolved all conflicts in the testimony, and drew all reasonable inferences from the facts.**8**

We do not review the credibility of the witnesses when we evaluate whether there existed sufficient evidence to support a conviction.**9** Just as the uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction, the uncorroborated testimony of an informant may also be sufficient.**10** Laughlin testified that he purchased firearms from Abner and Wilson and drugs from Wilson. The taped audio recordings of Laughlin's conversations with Abner and Wilson and his delivery of the contraband to Detective Benton corroborated all of Laughlin's testimony. Furthermore, the seizure of the SKS rifle from Abner's apartment; the ammunition, the drugs and drug paraphernalia from Wilson's apartment; and the bait money from Wilson's person, corroborated Laughlin's testimony. Accordingly, we hold that the evidence presented to the jury sufficiently established Abner's and Wilson's guilt as to each of their convictions.

_____

**6** We address Wilson's sufficiency of the evidence challenge regarding his 924(c)(1) count in section V.

**7** **Jackson v. Virginia**, 443 U.S. 307, 319 (1979).

**8** **Id.**

**9** **United States v. Reavis**, 48 F.3d 763, 771 (4th Cir. 1995) <u>cert</u>. <u>denied</u>, 115 S. Ct. 2597 (1995).

**10** **See United States v. Baker**, 985 F.2d 1248, 1255 (4th Cir. 1993) (uncorroborated testimony of accomplice sufficient to support conviction); and <u>United States v. Arrington</u>, 719 F.2d 701, 705 (4th Cir. 1983) (uncorroborated testimony of one witness sufficient to support conviction).

8

IV.

Wilson contends that the district court committed reversible error in failing to suppress the evidence found during the search of his apartment because the state agents violated his Fourth Amendment right against unreasonable search and seizure when they executed the warrant.**11**

Federal Rule of Criminal Procedure 12(b)(3) requires that motions to suppress evidence must be made before trial.**12** Wilson's pretrial suppression motion only asserted that the warrant was defective. The motion did not challenge the execution of the search warrant. The failure to preserve the issue properly amounts to waiver under Rule 12(f). Rule 12(f), however, also permits a district court to grant relief from the waiver "for cause shown."**13** We review a district court's denial of relief from a waiver for clear error. **14**

After the Government presented its case-in-chief, defense counsel for the first time challenged the execution of the search warrant. Defense counsel moved to suppress the evidence seized at Wilson's apartment on the basis that the state police had failed to knock and announce their identity and purpose before executing the search warrant. In support of the untimely motion to suppress, defense counsel argued that he had not challenged the execution of the search warrant prior to trial because he had only known Wilson's rendition of what had transpired. He further claimed that he did not discover how the state agents had actually executed the warrant until the Government had presented its case-in-chief. Unpersuaded that counsel's argument

_____

**11** U.S. Const. amend. IV.
**12** Fed. R. Crim. P. 12(b)(3).
**13** Rule 12(f) provides:

> Failure by a party to raise defenses or objection or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

**14** **United States v. Wilson**, 895 F.2d 168, 173 (4th Cir. 1990) (quoting United States v. Wertz, 625 F.2d 1128, 1132 (4th Cir. 1980)).

9

amounted to cause or justified his failure to raise this specific suppression challenge before trial, the district court overruled the motion.

The record shows that sufficient information was available to defense counsel before trial that would have enabled him to frame his suppression motion to include the execution of the search warrant. Defense counsel knew prior to trial that Laughlin was the state's informant and that Laughlin was present during the execution of the search warrant. Additionally, Wilson was personally aware of the agents' actions leading to their seizing the evidence. Wilson was lying on the couch adjacent to the door when the officers knocked, and he directed Laughlin to answer the door without inquiring as to who was knocking. Wilson was responsible for informing his counsel of the pertinent facts of the evening in question, and his defense counsel was responsible for vigorously investigating all of the details of what had transpired. Consequently, during his pre-trial investigation of the case, defense counsel could have discovered whether the state officials had actually failed to knock and announce their identity and purpose. Any "communications gap in that regard will not be recognized as good cause."[15] Finally, defense counsel failed to elicit testimony that the state agents had in fact failed to announce their presence. Consequently, we find no error in the district court's admission of the evidence seized at Wilson's apartment.

V.

Finally, Wilson claims the district court erred in denying his motion for judgment of acquittal as to the 18 U.S.C.§ 924(c)(1) charge on the basis that the Government failed to present sufficient evidence. We agree.

In reviewing the district court's denial of a motion for judgment of acquittal, we must consider the evidence viewed in the light most favorable to the government and determine whether any rational jury could have found each essential element of the crime charged beyond

_____

15 United States v. Ricco, 52 F.3d 58, 62 (4th Cir. 1995) (quoting Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.1(a), at 193 (2nd ed. 1987)) cert. denied, 116 S. Ct. 254 (1995).

10

a reasonable doubt.[16] To sustain a conviction under section 924(c)(1), the Government needed to demonstrate that Wilson (1) used, or (2) carried, (3) a firearm, (4) during and in relation to a drug trafficking offense.[17]

In support of its section 924(c)(1) charge against Wilson, the Government's case-in-chief established that on January 31, 1995: (1) Laughlin went to Wilson's apartment with the express intent to purchase more marijuana; (2) Wilson offered to sell Laughlin as much marijuana as he needed; (3) while Wilson negotiated the sale of marijuana to Laughlin, he removed an unloaded twenty-two caliber semi-automatic rifle from a box in his closet and offered to sell it to Laughlin; and (4) Laughlin purchased only the rifle. Additionally, the Government elicited testimony that Wilson stored marijuana in the same box in which he stored the rifle.

In Smith v. United States,[18] a case affirming a defendant's 924(c)(1) conviction for bartering a gun in exchange for drugs, the Supreme Court declared that "[t]he phrase in relation to . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence . . . [and] the gun at least must facilitate or have the potential of facilitating, the drug trafficking offense."[19] Unlike the defendant in Smith, Wilson's sale of the firearm neither facilitated nor had the potential of facilitating his marijuana sales.

First, the tape-recorded conversations and Laughlin's testimony reveal that Wilson neither bartered nor exchanged the rifle for drugs. Second, the same evidence establishes that Wilson attempted to sell both a rifle and marijuana to Laughlin. Third, the Government failed to elicit testimony from Laughlin that the presence of the firearm influenced his decision or intimidated him into purchasing marijuana from Wilson. And fourth, Laughlin freely elected to purchase the rifle

_____

**16** **United States v. Childress**, 26 F.3d 498, 501 (4th Cir. 1994).
**17** 18 U.S.C.A. § 924(c)(1) (West Supp. 1997).
**18** Smith v. United States, 508 U.S. 223 (1993).
**19** **Id.** at 238.

11

instead of the marijuana. Given the facts before us, we are hard-pressed to conclude that the sale of the rifle facilitated Wilson's drug trafficking business. It was a completely independent, yet contemporaneous action. Hence the Government failed to present sufficient evidence from which any rational jury could reasonably find that Wilson's sale of the rifle while negotiating a drug transaction satisfied the "in relation to" element of 18 U.S.C.§ 924(c)(1). Accordingly, we reverse Wilson's 18 U.S.C. § 924(c)(1) conviction and remand his case to the district court for resentencing.

VI.

For the foregoing reasons, the appellants' convictions are affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

No. 95-5560 - AFFIRMED IN PART, REVERSED IN PART
        AND REMANDED

No. 95-5563 - AFFIRMED

12