**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 97-4768

DAVID A. WILSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Glen M. Williams, Senior District Judge.
(CR-95-6-A)

Argued: October 26, 1998

Decided: December 31, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Knowlton Read, Jr., JESSEE & READ, P.C.,
Abingdon, Virginia, for Appellant. Rick A. Mountcastle, Assistant
United States Attorney, Abingdon, Virginia, for Appellee. **ON
BRIEF:** Robert P. Crouch, Jr., United States Attorney, Abingdon,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David A. Wilson challenges his sentences for controlled substances and weapons violations. Finding no reversible error, we affirm.

I.

Between January 29 and January 31, 1995, Wilson made several sales of marijuana and firearms to Clifton Laughlin, a police informant. See United States v. Wilson, 115 F.3d 1185, 1187 (4th Cir. 1997). A jury convicted Wilson on six counts: using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (count one); possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count two); possessing a firearm after felony conviction in violation of 18 U.S.C. § 922(g)(1) (counts three and seven); possessing a firearm with obliterated serial number in violation of 18 U.S.C. § 922(k) (count four); and possessing an unregistered short-barrel rifle in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (count eight).

After receipt of a presentence investigation report, the district court sentenced Wilson to 120 months on count one; section 924(c) required that sentence to run consecutively with any other sentence imposed. The district court then grouped the other five counts. As to these counts, the court calculated Wilson's criminal history category (CHC) as II and his offense level as 24, yielding a sentencing range of 51-71 months. Pursuant to U.S.S.G. § 4A1.3 and citing Wilson's violent criminal history, the district court departed upward to reach a sentence of 120 months for the grouped counts. The court sentenced Wilson to serve 60 months for counts two and four to run concurrently with a sentence of 120 months for counts three, seven and eight. Wilson's total sentence therefore was 240 months, plus a three-year supervised release period.

2

Subsequently, we reversed Wilson's § 924(c) conviction and remanded the case to the district court for resentencing. See Wilson, 115 F.3d 1185. At resentencing, the district court applied the four-level enhancement in U.S.S.G. § 2K2.1(b)(5) for possession of a weapon in connection with another felony. To avoid double counting, this enhancement had not been applied in the first sentence, in which Wilson had been convicted of and sentenced under§ 924(c). After considering Wilson's prior convictions and criminal activities, the court departed upward, ultimately calculating Wilson's CHC as VI and his offense level as 31, which established a sentencing guideline range of 188 to 235 months. The court sentenced Wilson to terms of 60 months on each of counts two and four to run concurrently with terms of 120 months on each of counts three and seven, as well as a term of 115 months for count eight to run consecutively with the first four counts, which produced a total sentence of 235 months. The court also gave Wilson 31 months credit for time served.

Wilson appeals, asserting that the district court erred in sentencing him. We review a district court's upward departure from the sentencing guidelines for abuse of discretion. If the district court bases its departure decision on a factual determination, our review of that underlying determination is for clear error. See United States v. Hairston, 96 F.3d 102, 106-07 (4th Cir. 1996). If the court's departure is based on a misinterpretation of the guidelines, we review the district court's reading of that underlying rule de novo. See id.

II.

Wilson initially contends that the district court failed to comply with United States v. Rusher, 966 F.2d 868, 882 (4th Cir. 1992).

A.

Under U.S.S.G. § 4A1.3, a court may depart upward from the guideline range if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S. Sentencing Guidelines Manual, § 4A1.3 (November 1994).

3

We held in Rusher that when a sentencing court departs upward pursuant to this provision, the court must provide a "short clear written statement or a reasoned statement from the bench" supporting its specific reasons for its departure from the guideline range. See Rusher, 966 F.2d at 882. The court is "not required to `incant the specific language used in the guidelines, . . . [but should] identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure under 4A1.3.'" Id. (quoting United States v. De Luna-Trujillo, 868 F.2d 122, 124 (5th Cir. 1989)). The sentencing court should decide what aspects of the defendant's criminal history it thinks the guidelines did not adequately consider in setting the criminal history category, and should "determine on the record whether these aspects are of sufficient importance and magnitude to justify departure." Id. at 883. "The requirement of providing specific reasons for departing `is not satisfied by a general recitation that the defendant's criminal history category or offense level underrepresents, in the sentencing court's opinion, the defendant's criminal record or the seriousness of the charged offense.'" Id. (quoting United States v. Wells, 878 F.2d 1232, 1233 (9th Cir. 1989)). This is so because:

> [t]o allow a judge summarily to depart from the guidelines without explaining why would be to return to sentencing practices rejected by Congress. Congress intended that the judge provide the most detailed explanation for a sentence beyond the boundary of the guideline range . . . . Articulating the reasons for departing is also necessary to allow informed appellate review of the judge's decision to depart.

Id. at 882.

During Wilson's first sentencing hearing, the district court departed upward from the guideline range of 63 to 78 months for the grouped counts, i.e., counts two, three, four, seven and eight. The district court stated the following reasons for departing upward to 120 months:

> Mr. Wilson has an extensive background with law enforcement and exposure to the criminal justice system beginning at age 13 and continuing up to the present time. This had a result of his being incarcerated the majority of

4

his adult life. Even though he's been on probation and parole, he has continued to commit additional crimes. His parole has been revoked on at least two occasions, and he has escaped from custody on one other occasion during which time he remained at large for nearly six months.

He's been arrested on at least three occasions since being paroled from the Tennessee State system in May of 1992. Other than this offense, the other two arrests involved violence.

The most disturbing aspect of Mr. Wilson's past criminal history is his violent nature. As evidenced in the presentence report, he murdered a 16 year old and assaulted two other individuals with a knife. In addition, he has a charge pending which involves the stabbing of another individual.

It is evident that Mr. Wilson has little regard for life or the well being of others. It also appears that Mr. Wilson has learned little from his past experiences. His criminal record, in this Court's opinion, is so violent, chronic and excessive as to lead to the conclusion that his criminal history is significantly more serious than that of a typical category three offender contemplated by the Sentencing Commission in promulgating the guidelines.

When resentencing Wilson, the district judge specifically referred to the upward departure in the first sentencing and summarized the reasons he had given in that proceeding, stating that "Mr. Wilson had . . . a large number of criminal violations that did not count in determining his criminal history category under the sentencing guidelines, and I am departing upward in this case because his actual criminal history is understated when the guidelines are strictly followed." The court then proceeded to discuss each uncounted conviction and instance of criminal conduct and assigned criminal history points accordingly. The court added 11 criminal history points for two separate larceny convictions, an attempted burglary conviction, and an assault and battery conviction. The court assigned six additional criminal history points for an incident outside a bar in 1994 during which Wilson stabbed a man and then brandished a pistol at a crowd of

5

bystanders. He summed up the defendant's extensive criminal background as follows:

> In view of the circumstances involved in the instant offense, and by looking at the defendant's criminal history, it can be ascertained that throughout his adult life he has continued the pattern of criminal conduct.

> In looking at this ongoing pattern of criminal conduct it can be determined that Mr. Wilson has an unusual penchant for serious criminality sufficient to remove him from the run of the mill or other offenders that are ordinarily sentenced by this Court.

Although Wilson briefly contends that his past convictions and criminal conduct did not provide sufficient support for an upward departure of this magnitude, that contention is meritless. Wilson's principal argument is that the district court failed to provide, as Rusher requires, articulation of the reasons for this departure. That argument presents a slightly closer question but we find that the district court's explanation satisfied the Rusher requirement that a court provide specific reasons for an upward departure.

The district court incorporated its extensive statement of reasons from the first sentencing into the resentencing. The court clearly identified the aggravating factors that were not otherwise adequately represented in Wilson's criminal history. It stated that Wilson committed numerous crimes, that Wilson continued to commit crimes while on probation and parole, and that many of the crimes were exceptionally violent and demonstrated a lack of regard for human life. The district court further articulated which aspects of the defendant's criminal history it thought the guidelines did not adequately consider in setting the criminal history category. Specifically, it stated that Wilson had murdered a 16-year-old with a knife and assaulted two other individuals with a knife.

Rusher requires that a court articulate its reasons for an upward departure to prevent judges from baselessly departing from the guideline range. See Rusher, 966 F.2d at 882. It is clear that the court's departure here was neither baseless nor unwarranted under § 4A1.3.

6

This Rusher requirement also serves to allow informed appellate review of sentences. Id. The district court's explanation adequately satisfies that purpose, as well. We are able to determine on what grounds the district court departed, the amount of criminal history points the court assigned to each past conviction or criminal activity, and the rationale for the departure.

B.

Rusher further mandates that in departing upward the sentencing court must sequentially address each sentencing category, "referring first to the next higher [criminal history] category" and moving on to a still higher category "only upon a finding that the next higher category fails "adequately to reflect the seriousness of the defendant's record." 966 F.2d at 884; see also United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992) (court can "move to successively higher categories only upon a finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct"). When a court determines that the extent and nature of the defendant's criminal history warrant an upward departure from CHC VI, the court should structure the departure by moving incrementally "down" the sentencing table to the next higher offense level under CHC VI until it finds a guideline range appropriate to the case. See U.S.S.G. § 4A1.3.

In Rusher, we vacated a sentence when the district court departed from CHC III to CHC VI without any consideration of the intermediate categories. See 966 F.2d at 884; see also United States v. Harrison, 58 F.3d 115, 118 (4th Cir. 1995) (vacating sentence where there was "not even a hint . . . that the district court attempted to comply with the procedural dictates" in departing above CHC VI from offense level 27 to level 31).

In the present case, however, the district court expressly considered each successive criminal history category, and did so on the record. At resentencing, the court set the initial offense level at 28 and the CHC at III. It found that CHC III "failed to adequately reflect the seriousness of defendant's record, and underrepresents the likelihood that he will commit future crimes." The court then added two criminal history points for a 1979 assault and battery, resulting in a CHC of IV.

7

The court found that a CHC IV failed to adequately represent the seriousness of Wilson's record, and so added three additional points for a 1975 larceny, placing Wilson in CHC V. Again, the court stated that this level was insufficient to represent the seriousness of Wilson's record; it applied three criminal history points for a 1976 burglary conviction increasing Wilson's CHC to VI.

Finding that CHC VI still failed to adequately represent the seriousness of Wilson's record and the likelihood that he would commit further crimes, the court added three more criminal history points for a 1977 larceny conviction. Because the court had reached CHC VI, the highest level, it proceeded "down the table" adding one point to the offense level, bringing the total to level 29. Again the court repeated that it considered that offense level inadequate. The court then added three more criminal history points for a 1994 knife attack. That increased the offense level to 30. Because it found this level was inadequate, the court added three additional points for the brandishing of a firearm arising from the same incident. It thus increased the offense level to 31. Finally, finding that an "offense level of 31 and criminal history category of six adequately reflects the seriousness of the defendant's record," the court chose not to apply additional criminal history points for a 1980 escape conviction.

The district court thus satisfied Rusher's second procedural dictate. The court referred to each successive criminal history category and offense level on the record, and found that each level underrepresented both the seriousness of the defendant's record and the likelihood that the defendant would commit further crimes.*

_____

*Wilson also argues that the district court did not have "reliable information" when it determined that the 1994 assault and brandishing incident could justify a departure from the guideline range. (An attempted second degree murder charge for this conduct was pending at the time of the first sentencing. At the time of resentencing, the charge had been dismissed because the victim died of causes unrelated to the attempted murder.) The guidelines do not require that only convictions be used to measure criminal history. See U.S.S.G. § 4A1.3(e). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. See U.S.S.G. § 6A1.3, commentary. The district court relied on signed statements of the victim and eight witnesses,

8

III.

Wilson next contends that the district court erred in increasing his base offense level pursuant to § 2K2.1(b)(5). That guideline provides the sentencing court may increase the base offense level by four:

> [i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense

U.S.S.G. § 2K2.1(b)(5).

The district court found that Wilson's conduct was covered by both parts of the guideline. We conclude that the court's determination that Wilson transferred the firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with a felony was adequately supported by the record. Because the two requirements of § 2K2.1(b)(5) are disjunctive, we need not decide whether Wilson himself used or possessed the firearm in connection with another felony.

In United States v. Cutler, 36 F.2d 406, 407 (4th Cir. 1994), we held that the sale of a firearm is sufficient to satisfy § 2K2.1(b)(5) if the seller had reason to know that the firearm would end up in the hands of a drug dealer. In the present case, the district court found that, because Wilson had sold the informant drugs on two occasions prior to selling him a .22 caliber rifle on January 31, 1995, Wilson had reason to believe that the weapon would be used or possessed in connection with the informant's drug business. Wilson maintains that because he only sold the informant two ounces of marijuana -- an amount consistent with personal use rather than dealing -- he had no

_____

which were consistent in all critical respects. The statements indicated that Wilson stabbed a man outside a bar and proceeded to wave a pistol at a crowd of bystanders. These statements constitute reliable information and the court did not abuse its discretion in using this information for the purpose of its upward departure.

reason to know that the informant would be entering the drug trade and so no basis to believe that the weapon would be used in connection with the resale of the drugs.

There is, however, ample evidence in the trial record to support the district court's finding. On January 29, 1995, when Wilson first approached Laughlin, Wilson stated that Laughlin could make money from the marijuana that Wilson would sell him. Wilson offered (and Laughlin agreed) that Wilson would "front" Laughlin an ounce of marijuana with the understanding that Laughlin would pay Wilson the next day. This clearly implies that Wilson expected Laughlin to sell the marijuana. In a tape recording made by Laughlin during the purchase of a second ounce of marijuana on January 30, 1995, Laughlin told Wilson that he had "to make some damn money, David [Wilson]. . . . Everybody likes that [marijuana]. They seem to like it. Be able to get anymore?" The next day, Wilson told Laughlin he could sell Laughlin as much marijuana as he wanted. Again, these exchanges indicate that Wilson believed that Laughlin intended to resell the marijuana.

On January 31, 1995, when Laughlin purchased the .22 caliber rifle from Wilson, Laughlin told Wilson that he wanted to resell that rifle. Focusing solely on this conversation, Wilson argues that he had no reason to believe this rifle would be used in Laughlin's drug business. But this evidence does not in any way contradict the two earlier conversations that do support this conclusion. Thus, looking to all the record evidence, Laughlin's January 31 statements do not render the district court's factual determination -- that Wilson had reason to believe that Laughlin would use the .22 caliber rifle in the furtherance of drug trafficking -- clearly erroneous. Even if Laughlin's statement about reselling the rifle was sufficient to contradict the evidence relied upon by the district court, it provides an independent reason to uphold the enhancement. The January 31, 1995 conversation evidences that Laughlin gave Wilson reason to believe that Laughlin might resell the rifle, and thus it supplies proof of Wilson's knowledge that the rifle "would be used or possessed in connection with another felony"; specifically, that Laughlin would be selling an unregistered short-barrel rifle. See 26 U.S.C.A.§ 5681(e) (West 1989) (unlawful to transfer an unregistered firearm).

10

For all of these reasons, the district court did not err in imposing a four-level enhancement under § 2K2.1(b)(5).

IV.

Finally, Wilson claims that he is entitled to have his 115 month sentence for possession of an unregistered rifle (count eight) reduced by the amount of time he served prior to resentencing. He contends that the current sentence violates the Double Jeopardy Clause because the 115 month sentence, when combined with the 31 months already served, exceeds the statutory maximum of 120 months for count eight.

We have held that the Double Jeopardy Clause is not implicated upon a defendant's resentencing unless the defendant has fully served his sentence pertaining to those counts. See United States v. Smith, 115 F.3d 241, 246 (4th Cir. 1997) (recognizing that once one component of a sentence is altered, "the whole sentence must be revisited"). Wilson is certainly entitled to, and was granted credit for, the 31 months he served prior to resentencing, but that credit is applied to his entire 235 month sentence. Wilson is not entitled to choose one component of his sentence, such as the sentence for count eight, and have the credit applied to that component in particular. The court's sentence of 115 months for count eight was in no way improper and does not violate the Double Jeopardy Clause.

V.

For all these reasons the sentence imposed by the district court is

AFFIRMED.

11