**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4984

JOHN WILSON, a/k/a Green Eyed
Donny,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.
(CR-96-68-C)

Submitted: January 19, 1999

Decided: February 3, 1999

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Rob Ratliff, Cincinnati, Ohio, for Appellant. Robert P. Crouch, Jr.,
United States Attorney, Joseph W. H. Mott, Assistant United States
Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

John Wilson was convicted by a jury of one count of conspiracy to distribute cocaine base in violation of 21 U.S.C.§ 846 (1994). He was sentenced to 235 months' imprisonment. On appeal, Wilson claims: (1) the court erred in finding him responsible for over 1.5 kilograms of crack cocaine; (2) the evidence was insufficient; and (3) the statement of a co-conspirator was admitted into evidence in error. Finding no reversible error, we affirm.

Taken in the light most favorable to the Government, see United States v. Burgos, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868), the evidence at Wilson's trial established the following facts. In the summer of 1996, an FBI task force in Winchester, Virginia, was investigating the activities of Derrick Dawson, a suspected drug trafficker. The task force discovered that Wilson was bringing large quantities of cocaine from Florida to the Winchester area. When in the Winchester area, Wilson would stay with Dawson and was observed selling crack cocaine. Wilson also received wire transfers from Dawson while Wilson was in Florida.

At sentencing, Wilson claimed that the presentence investigation report ("PSI") erred in recommending that he be held accountable for over 1.5 kilograms of cocaine. See U.S. Sentencing Guidelines Manual § 2D1.1(c) (1995). Specifically, he contended that the PSI's recommendation was not reliable because there was no direct evidence linking Wilson to any crack cocaine or to the conspiracy, and because statements attributed to persons who bought cocaine from Wilson or Dawson were not corroborated. Wilson objected to the drug amount, so the district court was obligated to "make an independent resolution of the factual issues raised by the objection." United States v. Williams, 152 F.3d 294, 300-01 (4th Cir. 1998). The court's calculation of the quantity of drugs is a factual determination and will be upheld unless clearly erroneous. See United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992). As the court noted, the issue of whether Wilson participated in a conspiracy involving the distribution

2

of crack cocaine was a factual matter decided by the jury. Thus, Wilson's first objection to the PSI was without merit.

As for the drug amount, the PSI included claims by cooperating witnesses that Wilson transported $4000 to $5000 worth of cocaine every other weekend from Florida to Winchester, and that on one evening in particular, he was to deliver one kilogram of crack cocaine. A witness also claimed that Wilson fronted him $250 worth of crack cocaine on at least three occasions. After hearing testimony from a probation officer summarizing the information contained in the PSI, the court found that there was substantial, reliable evidence indicating that Wilson was involved with more than 1.5 kilograms of cocaine.

Wilson's claim that the PSI lacked corroboration regarding statements attributed to cooperating witnesses was without merit because the Government may rely on uncorroborated hearsay evidence in order to prove drug amounts. See United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991). Further, much of Wilson's argument is based on his assertion that the Government's witnesses were not credible. When, as here, the district court's factual findings regarding drug quantity are based in part on the court's assessment of the demeanor and credibility of witnesses, we recognize that the district court is in the best position to evaluate the evidence. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). Finally, even discounting the statements attributed to Rosa Ann Cadet, a cooperating witness, that were inconsistent with her trial testimony, there remains substantial evidence that Wilson was responsible for more than 1.5 kilograms of crack cocaine. Thus, we conclude that the court's factual findings were not clearly erroneous.

Wilson also contends the evidence was insufficient to sustain the conviction because there was no evidence of an agreement to distribute crack cocaine between Wilson and Dawson. Evidence is sufficient to support a conviction so long as, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). An appellate court does not review the credibility of witnesses. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Even the uncorroborated testimony of a single witness may be sufficient to sustain a jury ver-

3

dict. See United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997).

The elements of conspiracy to possess crack cocaine with intent to distribute are: (1) an agreement between two or more persons to possess crack cocaine with intent to distribute it; (2) knowledge of the conspiracy by the defendant; and (3) a knowing and voluntary decision by the defendant to join the conspiracy. See Burgos, 94 F.3d at 857. Thus, to convict a defendant of conspiracy to distribute crack cocaine, the government must prove beyond a reasonable doubt both the existence of the conspiracy and the defendant's connection to the conspiracy. See id. at 858.

We find Wilson's contention meritless. Here, the jury heard evidence suggesting that Dawson and Wilson worked together. According to one witness, Leddie Burks, Dawson told her that she should go to Wilson for drugs if he was not available. On one occasion, when Wilson short-changed a customer, Dawson made up the difference. There was also evidence of wire transfers from Dawson to Wilson. Evidence of a conspiratorial agreement is often proven by such circumstantial evidence. See Burgos, 94 F.3d at 857.

At trial, Leddie Burks was permitted to testify over Wilson's objection as to a statement made by Dawson. According to Burks, Dawson was:

> saying stuff like, you know, [Wilson] was like his ace and [Wilson], you know, him and [Wilson] took care of each other. You know, that -- stuff like when [Wilson] would come, [Dawson] didn't have anything to worry about; not so much full remarks, it was just like innuendos that all of us would know, you know.

(J.A. at 51). The court found that Burks' testimony as to what Dawson stated was admissible as a statement made by a co-conspirator. See Fed. R. Evid. 801(d)(2)(E). When asked to explain that statement, Burks stated:

> Okay. Like, all right, say, if I would ask [Dawson], so what's up with [Wilson]. And then he would say, you know,

4

he's all right, he's my buddy, we look out for each other, he helps me, I help him kind of thing.

(J.A. at 52). Wilson contends that these statements were not made in furtherance of the conspiracy as required under Rule 801(d)(2)(E). To admit a co-conspirator's statement under this rule, the court must conclude that a conspiracy existed, that the declarant and the party against whom the testimony is sought to be admitted were both engaged in the conspiracy, and that the statements at issue were made in the course of and in furtherance of the conspiracy. See United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996). We review a court's decision to admit a co-conspirator's statement for abuse of discretion. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).

Burks and Dawson purchased crack cocaine from each other when their own supply was low. Dawson's statements to Burks explained Wilson's relationship with Dawson and why Burks could go to Wilson in Dawson's absence. Clearly, these statements were made to further the goals of the conspiracy. Thus, we find no abuse of discretion.

We affirm Wilson's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5