Filed:  December 15, 2006

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 05-4499(L)
(CR-04-127)

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NATHAN J. HUGHES,

Defendant - Appellant.

———————————

O R D E R

———————————

The court amends its opinion filed July 20, 2006, as follows:

On page 3, first paragraph, line 11 -- "forty months'" is corrected to read "forty-one months'."

For the Court - By Direction

___/s/ Patricia S. Connor___
Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4499**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NATHAN J. HUGHES,

Defendant - Appellant.

_____

**No. 05-4501**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LOIS KING,

Defendant - Appellant.

_____

Appeals from the United States District Court for the Southern District of West Virginia, at Parkersburg.  Joseph Robert Goodwin, District Judge.  (CR-04-127)

_____

Submitted:  May 31, 2006                    Decided:  July 20, 2006

_____

Before MICHAEL and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Jacqueline A. Hallinan, HALLINAN LAW OFFICES, P.L.L.C., Charleston, West Virginia; Herbert L. Hively, II, Hurricane, West Virginia, for Appellants.  Charles T. Miller, Acting United States Attorney, R. Gregory McVey, Assistant United States Attorney, Huntington, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Nathan Joseph Hughes appeals his conviction by a jury and sentence on charges of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and distribution of 1.1 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Seven) (Appeal No. 05-4499).  Lois King appeals her jury conviction and sentence on a charge of money laundering, in violation of 18 U.S.C. § 856 (Count Sixteen) (Appeal No. 05-4501).  The district court sentenced Hughes to 140 months' imprisonment, a three-year supervised release term, and ordered forfeiture of $200, as well as payment of a $200 statutory assessment.  The district court sentenced King to forty-one months' imprisonment, three years of supervised release, and ordered forfeiture of $50,000 (jointly and severally with Kirt R. King, Appellant King's son and co-Defendant), and payment of a $100 statutory assessment.

The charges arose in 2001 when the Drug Enforcement Administration and the Parkersburg Narcotics Violent Crimes Task Force ("Task Force") began an undercover investigation into cocaine trafficking in Wood County, West Virginia, targeting various individuals in the Parkersburg area including Appellant Hughes, as well as Kirt King and others.[*]  The evidence at trial revealed that

_____

[*]The Government introduced evidence at trial that Kirt King and Mario Mason joined forces to purchase cocaine from Columbus, Ohio, process it, and then resell it in the Parkersburg, West

- 3 -

the Task Force used Michelle Bailey, an exotic dancer, to make a controlled purchase of cocaine from Hughes. The Government presented evidence that Bailey entered a vehicle where Hughes was sitting and, after engaging in sexual banter, Hughes sold her 1.1 grams of cocaine for $200. The conversation was recorded, and, over the objections of, and following the denial of a suppression motion by, Hughes, the district court admitted the entire tape of the controlled buy, which included repeated discussion between Bailey and Hughes of sexual matters. Hughes renewed his objection to the playing of the unredacted tape for the jury, again arguing that its prejudicial effect outweighed its probative value.

Bailey testified at trial that she was working as a confidential informant for the Task Force on March 10, 2004, when she made a controlled purchase of cocaine from Hughes. She attested that the purchase occurred at night in a car at a gas station parking lot in Parkersburg. She testified that during the transaction, Hughes tried to "talk her into doing something," specifically perform oral sex on him, before selling her the cocaine. The audiotape played for the jury was replete with demands by Hughes that Bailey perform oral sex on him and show him her breasts. Hughes told Bailey that unless she performed oral sex on him, he would not "hook her up."

Virginia area. Testimony as to the amounts of cocaine purchased, processed, and redistributed by the conspiracy members was introduced by a number of witnesses.

Task Force Agent Doug Sturm corroborated Bailey's testimony as to the controlled buy from Hughes. Laboratory evidence confirmed that the purchase involved 1.1 grams of cocaine.

Sherman King testified that on several occasions he saw Hughes at Kirt King's residence, and saw Hughes give Kirt King money and later leave with a bag. Mario Mason testified that Hughes spent time at Kirt King's house and that he personally had seen Hughes sell cocaine. Curtis Richard testified that he also saw Hughes at Kirt King's house on several occasions, and that Hughes and King would go off together into a different room. Stephen Gandee, a co-conspirator, testified that he saw Hughes at Kirt King's residence, that he had distributed cocaine with Hughes at a bar in Parkersburg, and that he had overheard a conversation at the Carter County Correctional Center between Hughes and Kirt King about Hughes still owing King $1400.

With respect to Lois King, the Government alleged that they found 116.5 grams of cocaine in Kirt King's residence, worth $26,000, and that Lois King, Kirt King's mother, owned the residence. Mario Mason testified that Kirt King would give large amounts of cash to Appellant King, and that he and Kirt King used the residence to store and prepare for resale cocaine they had purchased from sources in Columbus, Ohio. He further testified that Appellant King was in the residence during the time he and Kirt King used it to process cocaine. Mason attested that

Appellant King was involved in taking the drug money she received from her son and putting it in assets, such as houses and cars. The Government presented additional evidence that Appellant King acquired and paid the land contract on one residence with a lump sum payment of $14,580 in cash, and that another property was purchased for $21,000, deeded, and being paid for by Appellant King, despite her lack of financial resources (as reported in her income tax records).

On appeal, Hughes claims that the district court erred in denying his Fed. R. Crim. P. 29 motion for acquittal of Count One of the superseding indictment on the ground that the evidence was insufficient to support the charge or the jury's verdict. The basis for his challenge is that the witnesses' credibility was suspect. Because we do not review witness credibility in determining the sufficiency of the evidence, see e.g., United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997), we find Hughes' assertion to be unavailing.

Hughes' final challenge on appeal is that the district court erred in allowing, over his objection, the introduction of the tape recording of the controlled buy that implicated Hughes engaging in sexual banter with the Government's confidential informant. Hughes alleges that the recording's prejudicial effect outweighed its probative value. We find this argument to be meritless. See generally United States v. Love, 134 F.3d 595, 603

(4th Cir. 1998) (noting that under our "broadly deferential standard" of review, we will not upset a district court's Rule 403 decision "except under the most extraordinary of circumstances") (citation and internal punctuation omitted).

King's first claim on appeal is that her sentence is unreasonable. After the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. See United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). However, in determining a sentence post-Booker, sentencing courts are still required to calculate and consider the guideline range prescribed thereby as well as the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2005). Id. We will affirm a post-Booker sentence if it is both reasonable and within the statutorily prescribed range. Hughes, 401 F.3d at 546-47.

As King's forty-one month prison sentence was within the properly calculated sentencing guideline range of 41 to 51 months' imprisonment, it is presumptively reasonable. United States v. Green, 436 F.3d 449, 457 (4th Cir.), cert. denied, 126 S. Ct. 2309 (2006). King has not rebutted that presumption as the district court appropriately treated the guidelines as advisory, calculated and considered the guideline range, and weighed the relevant § 3553(a) factors.

King's final challenge on appeal is that her retained trial counsel rendered ineffective assistance. She asserts that her attorney's continuing disregard for the judge's instructions not to thank him regarding his trial rulings, his disregard for the judge's instruction not to inquire into details of pending charges relative to a Government witness, and his use of a pejorative relative to an Assistant United States Attorney in the presence of a juror prejudiced her case. She further claims that her attorney was admonished by the district court five times for statements he made during his opening statement, that he failed to present a defense on her behalf, that his questions on direct examination were met with repeated objections by other attorneys, and that his cross-examination of Government witnesses lacked all "rhythm or craft."

King's claim of ineffective assistance of counsel must be brought in a collateral proceeding under 28 U.S.C. § 2255 (2000), unless it conclusively appears from the face of the record that her counsel was ineffective. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991). Because the record does not conclusively establish ineffective assistance of counsel, we decline to consider this claim on direct appeal.

Accordingly, we affirm the convictions and sentences of Hughes and King. We dispense with oral argument because the facts

and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
