**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-5103**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARTEZ LAMONT SHERROD,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Malcolm J. Howard, Senior District Judge.  (CR-04-75)

---

Submitted:  January 5, 2007          Decided:  January 19, 2007

---

Before WILKINS, Chief Judge, and WILLIAMS and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Kelly L. Greene, STUBBS & PERDUE, P.A., New Bern, North Carolina, for Appellant.  Frank D. Whitney, United States Attorney, Anne M. Hayes, Christine Witcover Dean, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Martez Lamont Sherrod appeals his convictions and sentence for various drug offenses. He argues that the evidence was insufficient to support his convictions and that his sentence was unconstitutionally enhanced to a life sentence. For the reasons that follow, we affirm.

I.

On December 5, 2002, Investigator Bruce Groccia of the Greenville Police Department conducted a narcotics investigation at the Jameson Inn in Greenville, North Carolina.[1] Investigator Groccia had received information that controlled substances were being sold out of Room 102 of the Jameson Inn, so he went to the hotel to conduct surveillance. Investigator Groccia observed multiple individuals drive into the parking lot, park, walk into Room 102, leave minutes later, and drive away. He also observed occasions in which a vehicle drove into the parking lot and a man came out of Room 102 and entered the vehicle; a short time later, the man exited the vehicle and returned to Room 102, and the vehicle drove away. Another man engaged in what looked like counter-surveillance: he walked to different parts of the building

---

[1]Because Sherrod challenges the sufficiency of the evidence supporting his conviction, we view the facts in the light most favorable to the Government. United States v. Pierce, 409 F.3d 228, 230 (4th Cir. 2005).

and looked around the corners. Based on his observations, Investigator Groccia requested and obtained a search warrant for Room 102.

Greenville Police Department Investigators Rose Edmonds and Antonio Braxton, along with other officers, executed the warrant and found ten to twelve individuals inside the hotel room. During the search of the room, the officers took keys to a burgundy Honda and $6,200 from Sherrod.

Outside the hotel, Investigator Groccia focused on the vehicles associated with Room 102. When a police canine alerted to the burgundy Honda, the officers used Sherrod's key to enter the Honda. The canine immediately alerted to the glove box, in which the officers found crack cocaine. Inside the car, the officers found registration and inspection paperwork listing Sherrod as the car's owner. The officers arrested Sherrod for trafficking cocaine.

On March 26, 2003, Investigator Edmonds and Investigator Braxton were driving northbound on Memorial Drive in Greenville when they met Sherrod driving southbound. When Sherrod passed the officers, he shielded his face with his left arm. Investigator Edmonds recognized Sherrod and made a U-turn on Memorial Drive to follow him. Sherrod attempted to elude the officers by accelerating. In response, Investigator Edmonds activated her car's blue lights and siren. Sherrod turned onto another street,

where the officers observed him throw something white out of the car window. Sherrod then drove off the road into a grassy area where Investigator Groccia, who had been working nearby at an off-duty security job, helped the other officers stop Sherrod by blocking his car. Investigator Braxton then walked back to the area where the officers had observed Sherrod throw what appeared to be a white bag. Two or three minutes later, he returned with the white bag, which contained four plastic bags of cocaine. The officers then arrested Sherrod for a second time.

On October 27, 2004, a federal grand jury indicted Sherrod for conspiracy to distribute more than 50 grams of cocaine base (crack cocaine) and more than 500 grams of cocaine (Count One), possession with intent to distribute of more than 50 grams of crack cocaine on December 6, 2002 (Count Two), and possession with intent to distribute cocaine on March 26, 2003 (Count Three). Jeremiah Lee Person and Vernon Lee Bryant were also charged in the conspiracy count.

Nearly six months before trial, and in accordance with 21 U.S.C.A. § 851 (West 1999), the Government filed notice of its intent to seek an enhanced penalty pursuant to 21 U.S.C.A. § 841(b)(1) (West 1999 & Supp. 2006) because Sherrod had been convicted of two prior drug-related felonies.

Bryant and Person pleaded guilty to the conspiracy count and testified against Sherrod. Bryant testified that he had known

4

Sherrod since the 1980s and that in 2003 he began purchasing crack cocaine and powder cocaine from Sherrod. Bryant purchased seven grams of crack cocaine daily for a couple of weeks. He then purchased powder cocaine every other day for several weeks, first in fourteen gram quantities and later in twenty-eight gram quantities.

Person, who was present in the Jameson Inn room when the police executed the search warrant, had known Sherrod since 1994 and described himself as a "good friend" of Sherrod. For a few months in 1999, he bought crack cocaine and powder cocaine weekly; he bought crack cocaine from Sherrod in 62 and 125 gram quantities and powder cocaine in quantities between 125 grams to 500 grams. In 2001, Person resumed buying powder cocaine from Sherrod, purchasing 125 and 250 gram quantities weekly or biweekly. Person estimated that he had purchased between three to four kilograms of powder cocaine from Sherrod. Person testified that 236 grams of crack cocaine that undercover law enforcement officers bought from him came from Sherrod.

After the Government presented its case-in-chief, Sherrod moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. The district court denied Sherrod's motion from the bench. Sherrod then introduced into evidence Investigator Groccia's written notes detailing a statement by Vernon Bryant that he did not buy drugs from Sherrod.

The jury found Sherrod guilty of conspiracy to possess with intent to distribute more than 50 grams of crack cocaine and between 500 grams to 5 kilograms of cocaine (Count 1), and guilty of possession with intent to distribute more than 50 grams of crack cocaine (Count 2).  The jury also found Sherrod guilty of possession with intent to distribute cocaine (Count 3).  Pursuant to 21 U.S.C.A. § 841(b)(1), the district court imposed statutorily mandated sentences  of life imprisonment for counts 1 and 2, to run concurrently.  The district court also imposed a concurrent sentence of 360 months' imprisonment for count 3.

## II.

"We review de novo a district court's denial of a motion, made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for judgment of acquittal."  United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006).    In evaluating the sufficiency of the evidence, we keep in mind that "a jury verdict 'must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'"  United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).   In the context of a criminal trial, "substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  Id.  "In applying

this standard of review, we must remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Id. (internal quotation marks omitted).

Sherrod contends that several of the witnesses that testified against him on the conspiracy charge were not credible because they pleaded guilty to the conspiracy count and were facing life sentences unless they obtained a sentencing reduction by cooperating with the Government. We reject this contention because "[w]e do not review the credibility of the witnesses when we evaluate whether there existed sufficient evidence to support a conviction." United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997). The jury weighed the credibility of the witnesses that testified against Sherrod and chose to believe them.

Sherrod also contends that the evidence was insufficient to support his convictions for possession of drugs because (1) there was evidence that the crack cocaine found in Sherrod's Honda at the Jameson Inn may have belonged to someone else, and (2) Investigator Braxton was possibly biased against Sherrod, making his discovery of the white bag containing cocaine unreliable.[2] We reject this

_____

[2]Sherrod contends that Investigator Braxton was possibly biased because there had been a complaint with the police department alleging that he was involved in drug activities with

argument because the jury makes credibility determinations and decides which interpretation of the evidence to believe. Burgos, 94 F.3d at 862. We therefore affirm Sherrod's convictions.

## III.

Sherrod argues that § 851 is unconstitutional in the wake of United States v. Booker, 543 U.S. 220 (2005). In United States v. Robinson, 404 F.3d 850 (4th Cir. 2005), we stated that "Booker did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence," id. at 862, even when the statutory minimum sentence is essentially a life sentence, see id. (vacating a sentence of 384 months' imprisonment because the statutory minimum sentence was 2184 months' imprisonment). This rule applies here. Because Sherrod's life sentence represented a statutorily provided minimum sentence, the district court had no discretion to depart below it. There is no Sixth Amendment problem because the life sentence is based on facts found by the jury (drug quantity) and the fact that Sherrod had two prior drug felony convictions, a fact that need not be found by the jury. See Booker, 543 U.S. at 244. Accordingly, we reject Sherrod's Booker-based challenge to § 851.

Sherrod. Prior to trial, Investigator Braxton was investigated and cleared of these allegations.

Sherrod also argues that his sentence was unconstitutionally enhanced to a life sentence because he refused to plead guilty. (Appellant's Br. at 26 ("[T]he only reason that [Sherrod] was enhanced to a life sentence, and did not receive a substantially less sentence within the 360-life range as was proscribed by the United States Sentencing Guidelines . . . is because he refused to plead guilty.").) As the Government correctly notes, the facts do not support Sherrod's assertion. Section 851 requires the Government to file notice of its intent to seek an enhanced penalty for prior convictions "<u>before</u> trial, or <u>before</u> entry of a plea of guilty." 21 U.S.C.A. § 851(a)(1) (emphases added). The Government complied with this requirement, filing its notice on January 24, 2005, which was well-before Sherrod pleaded not guilty on April 4, 2005. In fact, because the Government's § 851 notice was filed before he entered a plea, Sherrod remarked at his sentencing hearing that this presented him with the choice to "plead to life or [be] found guilty of life." (J.A. at 419.) Thus, the Government's decision to seek an enhanced sentence was unrelated to Sherrod's choice of pleas.

IV.

For the foregoing reasons, we affirm Sherrod's convictions and sentence. We dispense with oral argument because the facts and

9

legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED