Abdi Mohammed **UMAR,** Petitioner,

v.

**UNITED STATES** of America, Respondent.

Criminal No.: 2:10cr56
Civil No.: 2:14cv68

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed 03/02/2015

John Staige Davis, V., Williams Mullen, Richmond, VA, Benjamin Lucas Hatch, Joseph E. DePadilla, United States Attorney's Office, Norfolk, VA, Jerome Teresinski, U.S. Department of Justice, Washington, DC, for Respondent.

James Richard Theuer, James R. Theuer, PLLC, Norfolk, VA, for Petitioner.

### OPINION AND ORDER

Mark S. Davis, UNITED STATES DISTRICT JUDGE

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence, filed by Petitioner Abdi Mohammed Umar, ("Petitioner") pursuant to 28 U.S.C. § 2255 ("Pet'r's § 2255 Motion"). ECF No. 375. The crux of Petitioner's § 2255 motion involves his counsel's failure to adequately challenge the Government's alleged spoliation of evidence through the destruction of a vessel. However, Petitioner also asserts additional ineffective assistance of counsel claims and a sufficiency of the evidence claim in his reply brief in support of his § 2255 motion. The Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief sought in his § 2255 motion. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons discussed below, with respect to his ineffective assistance of counsel claims, Petitioner's § 2255 motion is **DENIED**. Regarding his sufficiency of the evidence claim, Petitioner's § 2255 motion is **DISMISSED** as procedurally defaulted and, in the alternative, **DENIED** on the merits.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2010, the USS Nicholas, a United States Navy frigate, was on a counter-piracy mission in the Indian Ocean between Somalia and the Seychelles. In the early morning on that date, Abdi Wali Dire, Gabul Abdullahi Ali, and Mohammed Modin Hasan approached the Nicholas in an attack skiff ("the attack skiff"), believing that the Nicholas was a merchant vessel. While Dire, Ali, and Hassan operated the attack skiff, Petitioner and Abdi Mohammed Gurewardher (collectively with Dire, Ali, Hassan, and Petitioner, "Defendants") remained on a larger mother ship ("the mother ship") some distance away. After Dire, Ali, and Hasan fired on the Nicholas with assault rifles, they quickly learned that they had unwittingly attacked a naval vessel when the crew of the Nicholas responded in kind. Following a short exchange of gunfire, Dire, Ali, and Hasan fled in their attack skiff. The Nicholas pursued the attack skiff, and captured it, Dire, Ali, and Hasan. During the pursuit, the crew of the Nicholas spotted on the horizon a flashing light emanating from the mother ship. Once the Nicholas had seized the attack skiff, its crew destroyed the attack skiff because the Nicholas did not have the capability to bring the skiff aboard the vessel and towing the skiff would have jeopardized the vessel's ability to pursue the mother ship. The Nicholas then pursued and captured the mother

ship, Petitioner, and Gurewardher. The crew of the Nicholas attempted to tow the mother ship for approximately two days. However, at one point during the tow, the sponson on the mother ship, to which the tow line had been attached, broke off. Although the crew of the Nicholas managed to rig another tow line to the mother ship thereafter, the Nicholas was only able to tow the mother ship for a few additional hours before the mother ship capsized. The crew of the Nicholas then sunk the mother ship.

On April 20, 2010, a federal grand jury returned a six-count indictment against Defendants. On July 7, 2010, a federal grand jury returned a fourteen-count superseding indictment against Defendants charging Petitioner with: Piracy under the Law of Nations (Count One); Attack to Plunder a Vessel (Count Two); Act of Violence Against Persons on a Vessel (Count Three); Conspiracy to Perform an Act of Violence Against Persons on a Vessel (Count Four); Assault with a Dangerous Weapon in the Special Maritime Jurisdiction (Counts Five and Six); Assault with a Dangerous Weapon on Federal Officers and Employees (Counts Seven and Eight); Conspiracy Involving a Firearm and a Crime of Violence (Count Nine); Using, Carrying, and Possessing a Firearm in Relation to a Crime of Violence (Counts Ten and Eleven); Using, Carrying, and Possessing a Destructive Device in Relation to a Crime of Violence (Count Twelve); Carrying an Explosive During the Commission of a Felony (Count Thirteen); and Conspiracy to Carry an Explosive During the Commission of a Felony (Count Fourteen).

On July 30, 2010, Ali moved to dismiss all of the Counts of the Superseding In-

dictment on the basis that the United States Navy's intentional destruction of the attack skiff prevented Defendant from putting on a meaningful defense, in violation of the Fifth and Sixth Amendments. ECF No. 112. Ali argued that the attack skiff contained exculpatory evidence that the crew of the Nicholas had destroyed in bad faith. On October 29, 2010, the Court denied Ali's motion to dismiss based on the Government's alleged spoliation of the evidence in the attack skiff. United States v. Hasan, 747 F.Supp.2d 642, 698 (E.D.Va. 2010). The Court found that the Government had no duty to preserve the attack skiff because the crew of the Nicholas could not have done so without seriously limiting their ability to complete their military mission. Id. In addition, the Court found that Ali had failed to present any evidence demonstrating bad faith on the part of the Government in destroying the attack skiff and that photographs and video footage of the attack skiff served as substitutes for any physical evidence from the skiff. Id.

On November 24, 2010, following an eleven-day trial, a jury returned separate verdicts of guilty against Defendants on all counts. Thereafter, Petitioner filed a Rule 29 motion for acquittal, ECF No. 229, on Counts One, and Seven through Fourteen. On March 9, 2011, the Court dismissed Count Thirteen of the Superseding Indictment as multiplicitous, but denied the remainder of Petitioner's Rule 29 motion. Opinion and Order, ECF No. 296. On March 14, 2011, the Court sentenced Petitioner to a total term of imprisonment of life plus nine-hundred sixty months on the remaining counts of the Superseding Indictment.[1]

---

1. More specifically, the Court imposed mandatory life sentences for the Count One piracy offense; concurrent sentences of 120 months each on Counts Two, Five, and Six, and of

240 months each on Counts Three, Four, Seven, Eight, Nine, and Fourteen; plus consecutive sentences of 300 months each on Counts

On March 22, 2011, Petitioner appealed his conviction to the United States Court of Appeals for the Fourth Circuit, alleging that: as to Count One, the Court improperly instructed the jury and denied Petitioner's post-trial Rule 29 motion; the Court erroneously denied Petitioner's motion to suppress his statements aboard the Nicholas; and the Court improperly refused to merge Counts Ten through Twelve for sentencing purposes. On May 23, 2012, in a published opinion, the Fourth Circuit affirmed Petitioner's conviction and his co-defendants' convictions. United States v. Dire, 680 F.3d 446 (4th Cir.2012). On January 22, 2013, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. Dire v. United States, —— U.S. ——, 133 S.Ct. 982, 184 L.Ed.2d 765 (2013).

On February 5, 2014, Petitioner filed his § 2255 motion. ECF No. 375. On February 27, 2014, the Court ordered the Government to file a response to Petitioner's motion. On March 18, 2014, the Government filed a motion to compel counsel for Petitioner, Mr. James E. Short, to file an affidavit responding to Petitioner's ineffective assistance claims, ECF No. 378, which motion to compel the Court granted on March 19, 2014, ECF No. 380. On June 30, 2014, the Government filed its response to Petitioner's motion, along with an affidavit of Mr. Short responding to Petitioner's claims. ECF No. 394. After receiving leave of Court, ECF No. 397, on August 14, 2014, Petitioner filed a reply to the Government's response. ECF No. 401. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW FOR § 2255 MOTION

▆▆▆ A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence"

pursuant to 28 U.S.C. § 2255. To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief, a petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir.1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

▆▆▆ A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 333 (4th Cir. 2000) (" '[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.' " (quoting Davis v. United States, 417 U.S. 333, 343, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentencing determination. United States v. Allgood, 48 F.Supp.2d 554, 558 (E.D.Va.1999). To the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United

Ten and Eleven, and of 360 months on Count Twelve. Judgment at 3, ECF No. 312.

States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1981).

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164–65, 102 S.Ct. 1584. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir.1999). " 'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.' " United States v. Pettiford, 612 F.3d 270, 280 (4th Cir.2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170, 102 S.Ct. 1584.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); see Mikalajunas, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " House v. Bell, 547 U.S. 518, 536–37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir.1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' " (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir.1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. See United States v. Baptiste, 596 F.3d 214, 216 n. 1 (4th Cir.2010) (quoting Massaro v. United States, 538 U.S. 500, 504–06, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)) (" '[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby risking the failure of '[e]ven meritorious ·claims.' ") (alterations in original).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a defendant with " 'the right to the <u>effective assistance</u> of counsel.' " <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)) (emphasis added). In order to demonstrate that defense counsel failed to provide effective assistance, in violation of the Constitution, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. <u>Id.</u> at 687–88, 104 S.Ct. 2052. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of this test articulated in <u>Strickland</u>. <u>United States v. Turcotte</u>, 405 F.3d 515, 537 (7th Cir.2005).

When evaluating counsel's performance under the first prong of the <u>Strickland</u> test, courts "must be highly deferential." <u>Id.</u> at 689, 104 S.Ct. 2052; <u>see also</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (discussing the "highly demanding" <u>Strickland</u> standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." <u>Springer v. Collins</u>, 586 F.2d 329, 332 (4th Cir.1978); <u>see</u> <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland,</u> 466 U.S. at 689, 104 S.Ct. 2052. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u> If defense counsel has made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will seldom if ever be found wanting." <u>Id.</u> at 681, 104 S.Ct. 2052 (internal quotation marks omitted). Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks"—such strategic decisions must be afforded " 'enormous deference.' " <u>United States v. Terry</u>, 366 F.3d 312, 317 (4th Cir.2004) (quoting <u>United States v. Kozinski</u>, 16 F.3d 795, 813 (7th Cir.1994)).

The second prong of the <u>Strickland</u> test requires a petitioner to "affirmatively prove prejudice." <u>Id.</u> at 693, 104 S.Ct. 2052. To meet this prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 693–94, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694, 104 S.Ct. 2052. If the Petitioner fails to prove either of the two prongs of the <u>Strickland</u> test, the Court need not evaluate the other

prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir.2004).

## III. DISCUSSION

As noted above, Petitioner's primary ineffective assistance of counsel claims concern counsel's alleged failure to adequately contest the destruction of the mother ship by the United States Navy. However, in addition, Petitioner appears to assert that counsel provided him constitutionally deficient assistance: by failing to adequately challenge Petitioner's participation in the conspiracy; by forcing Petitioner to testify; by failing to inform Petitioner of an alleged right to retain different counsel on appeal; by failing to adequately respond when Petitioner indicated that he could not understand what his translator was saying; and by failing to transmit a copy of jury instructions to aid Petitioner in connection with the instant motion. Construing Petitioner's filings liberally, he also appears to challenge the sufficiency of the evidence as to the conspiracy charges of which the jury convicted Petitioner. Finally, Petitioner requests that the Court appoint counsel to assist him in these habeas proceedings. The Court will address each of Petitioner's contentions in turn.[2]

### A. Ineffective Assistance of Counsel

#### 1. Spoliation

Petitioner claims that he received ineffective assistance of counsel in connection with the destruction of the mother ship based on counsel's failure to: 1) obtain an inventory of the contents of the mother ship pursuant to Rule 41 of the Federal Rules of Criminal Procedure; 2) file a motion to dismiss the charges against Petitioner based on spoliation of evidence; and 3) seek a jury instruction on spoliation. All three claims lack merit.

#### a. Rule 41 Inventory

■ The Court rejects Petitioner's contention that counsel's failure to seek a Rule 41 inventory of the mother ship constituted ineffective assistance of counsel because Petitioner has failed to demonstrate that such action fell below the objective standard of reasonableness under Strickland's performance prong. Federal Rule of Criminal Procedure 41(f)(1)(B) requires that an "officer present during the execution" of a warrant "prepare an inventory of any· property seized." However, Petitioner has not demonstrated how the provisions of the Federal Rules of Criminal Procedure governing the execution of search or seizure warrants by law enforcement apply to the seizure of a mother ship by the United States Navy during counter-piracy operations on the high seas. Cf. Wu Tien Li–Shou v. United States, 777 F.3d 175, 183 (4th Cir.2015) (noting, in the context of a wrongful death action, that "nothing about" the actions of U.S. Navy personnel in destroying a fishing vessel during a counter-piracy operation was "consistent with a traditional police action."). Indeed, Petitioner has conceded that "on the waters, getting a warrant would not be need[ed] probably, d[ue] to practical considerations." Pet'r's Reply Br. at 2, ECF No. 401. Thus, it is a highly dubious assertion that the Rules of Criminal Procedure governed the United States Navy's counter-piracy actions on the high seas, much less that Rule 41(f)(1)—a pro-

---

**2.** The Court notes that Petitioner appears to have failed to timely file his § 2255 petition within one year of the Supreme Court's January 22, 2013 denial of his petition for a writ of certiorari. However, Petitioner contends that the Court should equitably toll the 28 U.S.C. § 2255(f)(1) statute of limitations because his counsel failed to timely inform him that the Supreme Court had denied his petition for a writ of certiorari. The Government has elected not to contest Petitioner's request for equitable tolling. See Gov't's Resp. to Pet'r's § 2255 Mot. at 9. Therefore, the Court will equitably toll the statute of limitations and consider Petitioner to have timely filed the instant petition.

vision explicitly tied to the execution of a warrant—required the sailors of the Nicholas to prepare an inventory of the mother ship in a situation where, concededly, no warrant was involved or necessary. Accordingly, Petitioner has not rebutted the strong presumption that counsel's conduct fell within the wide range of reasonable professional conduct, Strickland, 466 U.S. at 689, 104 S.Ct. 2052, because a reasonable attorney in counsel's position would not have had any basis to conclude that Rule 41 provided an appropriate mechanism to challenge the destruction of the mother ship.

 Relatedly, Petitioner's claim based on Rule 41 also fails because he has not satisfied the prejudice prong of Strickland. If counsel had sought to dismiss the charges against Petitioner based on the United States Navy's failure to comply with Rule 41(f)(1), the Court would have denied such a motion because, as noted above, Rule 41 does not apply to the United States Navy's actions during counterpiracy operations.[3] Therefore, Petitioner has not shown "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," id. at 693–94, 104 S.Ct. 2052, because the Court would have denied any motion predicated on the United States Navy's failure to comply with Rule 41(f).

### b. Motion to Dismiss

 Petitioner argues that counsel provided constitutionally deficient assistance by failing to file a spoliation motion similar to the motion counsel for Dire filed seeking dismissal of the indictment based on the destruction of the attack skiff. See Mot. to Dismiss, ECF No. 112. Petitioner contends that the mother ship contained crucial evidence that Petitioner was not involved with the piratical conspiracy, but was, in fact, a fisherman. Consequently, Petitioner asserts that the Navy's destruction of the mother ship eliminated important exculpatory evidence and, therefore, that counsel was ineffective because he failed to contest such destruction.

 Petitioner's claim that he received ineffective assistance of counsel resulting from counsel's failure to move to dismiss the indictment based on spoliation of evidence fails as Petitioner has not satisfied the performance or prejudice prongs of Strickland. In this case, Petitioner has not shown that his counsel's decision not to contest the destruction of the mother ship was objectively unreasonable—a conclusion that logically follows from the Court's denial of a similar motion filed by counsel for Dire. As noted in the Court's Opinion and Order denying Dire's spoliation motion, the Government only violates a defendant's constitutional rights when it destroys exculpatory evidence in bad faith. Hasan, 747 F.Supp.2d at 697 (citing California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); Arizona v. Youngblood, 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). Moreover, the spoliation doctrine presupposes that the Government has the ability to possess and control the evidence. Id. at 698 (citing United States v. Hughes, 211 F.3d 676, 688 (1st Cir.2000)). The Court denied Dire's spoliation motion because Dire had failed to demonstrate either that the Government had the ability to possess and control the

---

**3.** Even in cases where Rule 41 applies and officers fail to comply with such Rule's inventory requirement, a defendant's remedy is not automatic suppression of the evidence seized in executing the warrant. Rather, a defendant must demonstrate prejudice. See, e.g., United States v. Nichols, 344 F.3d 793, 799 (8th Cir.2003); cf. United States v. Simons, 206 F.3d 392, 403 (4th Cir.2000) (citation omitted) (noting that non-constitutional violations of Rule 41 require suppression only when the defendant is prejudiced by the violation).

attack skiff or that the United States Navy acted in bad faith in destroying such skiff. Any spoliation motion that counsel for Petitioner would have filed based on the destruction of the mother ship would have been almost identical to that filed by counsel for Dire because the United States Navy destroyed both vessels for similar reasons, in similar circumstances. Therefore, given that a spoliation motion based on the destruction of the mother ship would have been indistinguishable from Dire's motion based on the destruction of the attack skiff, a reasonable attorney in counsel's position could have concluded that Petitioner would not benefit from filing a spoliation motion because the Court would deny such motion for the same reason it denied Dire's motion. Thus, Petitioner has not rebutted the strong presumption that counsel's conduct fell within the wide range of reasonable professional conduct. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

▇ Similarly, even assuming, arguendo, that counsel's performance fell below the objective standard of reasonableness because he failed to file a spoliation motion, Petitioner's claim based on such omission fails under Strickland's prejudice prong because the Court would have denied such motion. All of the reasons underlying the Court's decision to deny Dire's spoliation motion would have applied with equal, if not greater, force to a spoliation motion filed by Petitioner. Just as the

Government lacked the ability to possess and control the attack skiff, the Government could not maintain possession of the mother ship. Unlike the attack skiff, the Government attempted to preserve the mother ship by towing it behind the Nicholas. However, the Government's efforts to preserve the mother ship ultimately failed when the mother ship capsized. Therefore, Petitioner's spoliation motion necessarily would fail because all of the evidence at the hearing on Dire's spoliation motion indicated that the United States Navy was physically incapable of maintaining possession of the mother ship. Cf. Opinion and Order at 101–02, ECF No. 179 (denying Dire's motion in part because the Navy was unable to possess and control the attack skiff). Moreover, just as Dire failed to present any evidence of bad faith, Petitioner has not provided any basis for the Court to conclude that the Navy acted in bad faith in destroying the mother ship. Indeed, the Navy's repeated efforts to tow the mother ship bely any contention that the crew of the Nicholas acted in bad faith in destroying the mother ship. Thus, Petitioner's claim fails because his allegations do not indicate "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," id. at 693–94, 104 S.Ct. 2052, because the Court would have denied any spoliation motion for essentially the same reasons it denied Dire's motion.[4]

---

4. The Court rejects Petitioner's contention that the destruction of the mother ship is distinguishable from the destruction of the attack skiff because the mother ship may have contained a greater volume of exculpatory evidence than the attack skiff. While, as Petitioner alleges, the mother ship may have contained fishing equipment suggesting that Petitioner was not involved in the piratical attack on the Nicholas, the nature of the evidence allegedly destroyed does not alter the Court's conclusion that Petitioner's allegations do not satisfy the deficient performance

or prejudice prongs of Strickland. The nature of the alleged evidence on the mother ship does not undermine the Court's conclusion that a reasonable attorney in defense counsel's position could have concluded that the Court would have denied a spoliation motion for the same reason the Court denied Dire's spoliation motion. Likewise, given the testimony at the motion hearing on Dire's spoliation motion indicating that the Government attempted to preserve the mother ship, but ultimately failed to do so once the mother ship capsized, the nature of the alleged evi-

### c. Jury Instruction

Finally, with respect to spoliation, Petitioner contends that he received ineffective assistance of counsel because counsel failed to request a jury instruction on the spoliation of evidence. Petitioner's jury-instruction claim fails for the same reasons Petitioner's spoliation-motion claim fails. Petitioner has not satisfied Strickland's prejudice prong because, just as a reasonable attorney in counsel's position could have concluded that a spoliation motion would have been denied in light of the Court's ruling on Dire's spoliation motion, a reasonable attorney also could have concluded that the Court would have refused to instruct the jury on spoliation in light of the· Court's conclusion with respect to Dire's spoliation motion. Additionally, Petitioner has not satisfied the prejudice prong of Strickland regarding his jury-instruction claim because he has not shown that the result of the proceedings would have been different if counsel requested a spoliation instruction. For the same reasons the Court denied Dire's spoliation motion, the Court would have denied Petitioner's request for a spoliation instruction. Accordingly, the Court will DENY Petitioner's motion with respect to his claim that he received ineffective assistance of counsel based on his attorney's failure to seek a Rule 41 inventory of the mother ship, file a motion to dismiss based on spoliation, or request a jury instruction on spoliation.

### 2. Failure to Challenge the Sufficiency of the Evidence on Petitioner's Conspiracy Charges

Although not raised in his § 2255 motion, in his reply brief, Petitioner appears to allege that he received ineffective assis-

tance of counsel based on his attorney's failure to adequately challenge the sufficiency of the evidence supporting Petitioner's convictions on the conspiracy charges. In hypothetical questions, Petitioner questions whether: he received an adequate jury instruction on the law of conspiracy, his counsel advocated in closing argument that there was insufficient evidence to demonstrate that Petitioner was a member of the piratical conspiracy, or his counsel filed a Rule 29 motion prior to the verdict seeking acquittal based on insufficient evidence. Assuming, arguendo, that Petitioner challenges his conviction on such grounds, the Court finds that such challenges lack merit.

### a. Jury Instruction

Petitioner appears to argue that his counsel's performance was deficient and prejudicial because counsel did not adequately ensure that the Court instructed the jury on the law of conspiracy regarding "mere presence" at the scene of a crime. However, under Strickland, Petitioner has demonstrated neither deficient performance nor prejudice because the Court accurately instructed the jury on the law of conspiracy, including "mere presence"· at the scene of the crime, in jury instruction forty-six through forty-eight. See Trial Tr. at 25-28, ECF No. 356; United States v. Love, 767 F.2d 1052, 1058–59 & nn. 7–8 (4th Cir.1985). Therefore, the Court rejects Petitioner's claim that he received ineffective assistance of counsel based on his attorney's alleged failure to request a "mere presence" instruction.

### b. Closing Argument

· Next, Petitioner argues that counsel's performance was constitutionally deficient

---

dence lost with the mother ship does not alter the Court's determination that there is no reasonable probability that a spoliation motion would have altered the proceedings. The evidence in the record indicates that the Government acted in good faith and did not have

the ability to possess and control the mother ship and, therefore, the Court would have denied any spoliation motion filed by Petitioner even though the evidence allegedly lost with the mother ship may have differed from that allegedly lost with the attack skiff.

because counsel did not adequately advocate in closing argument that Petitioner was merely present at the scene of the crime. Like Petitioner's jury-instruction claim, Petitioner's closing-argument claim fails because he has established neither deficient performance nor prejudice. The record conclusively establishes that the crux of counsel's closing argument, in fact, was that Petitioner was merely in the wrong place at the wrong time. For example, counsel closed his argument by stating:

> And I think it really comes down to the same question: Is Mr. Umar a willing participant? I submit to you that the government has failed to prove their case. They have not met their burden. He's not a willing participant. Simply being in the wrong place at the wrong time is not a crime. And I would respectfully ask you to acquit Mr. Umar of the charges.

Trial Tr. at 63:6-9, ECF No. 338. Thus, the Court rejects Petitioner's claim that counsel provided ineffective assistance of counsel by failing to advocate that Petitioner was merely present at the scene of the crime because counsel presented such argument to the jury in his closing argument.

### c. Rule 29 Motion

■ Finally, with respect to the sufficiency of the evidence on the conspiracy claims, Petitioner contends that he received ineffective assistance of counsel because counsel did not move for a judgment of acquittal under Rule 29 at the close of the Government's case. Nonetheless, as with Petitioner's other claims relating to the sufficiency of the evidence regarding the conspiracy convictions, Petitioner's Rule 29 claim fails to establish either deficient performance or prejudice.

Petitioner's Rule 29 claim fails under Strickland's performance prong. Under the performance prong of Strickland, "[c]oun-

sel's 'strategic choices made after thorough investigation ... are virtually unchallengeable ....'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.2008) (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052) (first omission in original). Furthermore, the Fourth Circuit has suggested that whether to file a motion for acquittal under Rule 29 falls within the realm of strategic choices that a court must hesitate to second guess. See United States v. Daniel, 3 F.3d 775, 779 (4th Cir.1993); United States v. Mayberry, 341 Fed.Appx. 859, 862 (4th Cir.2009) (unpublished). In this case, other than his conclusory assertion that counsel should have filed a motion for acquittal following the close of the Government's evidence, Petitioner has presented few allegations to support his contention that it was objectively unreasonable for counsel to decide not to file a motion for acquittal following the close of the Government's case. However, the record establishes that counsel, by adopting Hasan's motion, did make a Rule 29 motion for a judgment of acquittal on Counts Twelve through Fourteen on the basis that the Government had failed to present sufficient evidence to sustain a conviction on each charge. See Trial Tr. at 1047-52, ECF No. 252. Thus, the record suggests that counsel made a strategic choice to file a Rule 29 motion with respect to some charges, but not others. In light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the Court concludes that Petitioner's allegations fail to establish that counsel provided deficient assistance when he filed a Rule 29 motion with respect to Counts Twelve through Fourteen, but not the conspiracy counts, at the close of the Government's case.

■ In the alternative, the Court finds that Petitioner's Rule 29 claim fails under the prejudice prong of Strickland because there was substantial evidence in the rec-

ord to support Petitioner's conviction on the conspiracy counts. Therefore, Petitioner has not shown a reasonable probability that the outcome of the proceedings would have been different if counsel had filed a motion for a judgment of acquittal on the conspiracy charges at the close of the Government's case because the Court would have denied such a motion.

The standard applicable to Rule 29 motions is well settled:

> To prevail on any sufficiency challenge, a defendant must meet an exacting standard. In most cases, evidence adequately supports a conviction if, viewing it in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

United States v. Abu Ali, 528 F.3d 210, 234 (4th Cir.2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Although the uncorroborated testimony of a single witness is sufficient to sustain a conviction, e.g., United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir.1997) (citations omitted), "a criminal defendant's conviction cannot rest entirely on an uncorroborated extrajudicial confession," United States v. Stephens, 482 F.3d 669, 672 (4th Cir.2007) (citations omitted). Thus, the Government " 'must introduce substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement.' " Abu Ali, 528 F.3d at 235 (quoting Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954)). "Independent evidence adequately corroborates a confession if it 'supports the essential facts admitted sufficiently to justify a jury inference of their truth ....' " Id. (quoting Opper, 348 U.S. at 93, 75 S.Ct. 158).

In this case, Petitioner has not demonstrated prejudice under Strickland because the Court would have denied a motion for a judgment of acquittal on the conspiracy charges had counsel for Petitioner filed such a motion at the close of the Government's case. Substantial evidence supported Petitioner's conviction on the conspiracy charges. The testimony of Agent Michael R. Knox established that Petitioner himself confessed to his involvement in the piratical conspiracy. According to Agent Knox, Petitioner indicated that the pirates' leader, Abdi Qudid, recruited Petitioner, that Petitioner's role was "to navigate the motor skiff," and "he and other persons departed Somalia with the intention of pirating a merchant vessel." Trial Tr. at 887-88, ECF No. 251. In addition, in his interview with Agent Knox, Petitioner stated that he expected no less than $10,000 if the attack was successful. Id. at 888. Petitioner also indicated that the group was financed by a man in Somalia, Mohammed Gafargi. Id. at 893. Finally, on the night of the raid on the Nicholas, Petitioner stated that he was responsible for staying on the mother ship to navigate and drive, and that he stayed behind with another person. Id. Thus, Petitioner's confession to Agent Knox established that Petitioner played an active role in the piratical conspiracy.

Importantly, the confession of Gurewardher was substantial independent evidence—along with other evidence—corroborating Petitioner's confession. According to Agent Knox, Gurewardher stated that Abdi Qudid was the leader of the pirate group, Gurewardher's role was to navigate and cook for the group, he was a willing participant in the plan to pirate a merchant vessel, and expected to receive between $30,000 and $40,000 if the group succeeded. Id. at 882-83. In addition, Gurewardher indicated that a man in Somalia had invested money to fund the pirate group. Id. at 884. Agent Knox testified that in his confession Gurewardher stated that, on the night of the attack, the pirate group was on a mother ship tied to two

smaller vessels, Qudid sighted a ship a few miles away, and Qudid then ordered all the group's members but Gurewardher and another person to attack the ship using the two smaller vessels. Id. at 883. Qudid and the other members of the group took weapons with them and did not leave behind any weapons on the mother ship. Id. Accordingly, Petitioner's confession was substantially corroborated because both Gurewardher and Petitioner indicated that: the pirate group had planned to attack a merchant vessel, Abdi Qudid led the group, a man in Somalia financed the group, and on the night of the attack only two men, Gurewardher and Petitioner, remained on the mother ship. In light of all the evidence presented during the Government's case-in-chief, including Petitioner's confession and Gurewardher's confession, a "rational trier of fact could have found the essential elements" of the conspiracy charges against Petitioner beyond a reasonable doubt. See Abu Ali, 528 F.3d at 234. Therefore, if counsel for Petitioner had moved for a judgment of acquittal on the basis that the Government had not established sufficient evidence to support conviction on Petitioner's conspiracy charges, the Court would have denied such a motion. Accordingly, Petitioner's Rule 29 claim fails because he has not shown a reasonable probability that the outcome of the proceedings would have been different if counsel had filed a Rule 29 motion with respect to the conspiracy charges. The Court will **DENY** Petitioner's motion regarding the jury instruction on conspiracy, counsel's alleged failure to advocate that Petitioner was merely present at the scene of the crime, and counsel's failure to file a Rule 29 motion as to the conspiracy charges at the close of the Government's case.

### 3. Petitioner's Decision to Testify

■ As his next alleged grounds of ineffective assistance of counsel, Petitioner contends that counsel provided ineffective assistance by forcing Petitioner to testify in his defense. According to Petitioner, counsel "forc[ed] [Petitioner] to testify" and indicated that such testimony was necessary. Pet'r's Reply Br. at 5.

Petitioner's assertion that counsel provided constitutionally deficient assistance by forcing him to testify in his own defense fails under both the deficient performance and prejudice prongs of Strickland. The United States Court of Appeals for the Fourth Circuit, recognizing the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," has long held that "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter v. Lee, 283 F.3d 240, 249 (4th Cir.2002) (quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir.1938)). However, aside from his conclusory assertion that counsel forced him to testify, Petitioner has not presented any allegations indicating that counsel's conduct in advising him to testify fell outside the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Turcotte, 405 F.3d at 537. Therefore, Petitioner has failed to rebut the presumption that counsel's performance was reasonable. In any event, Petitioner's contention is without legal merit because the record clearly indicates that counsel did not force Petitioner to testify and discussed whether Petitioner should testify.

■ A careful review of the trial transcript reveals that Petitioner cannot demonstrate prejudice with respect to his decision to testify because counsel did not force him to testify and counsel discussed with Petitioner the decision to testify. Because "[s]olemn declarations in open court carry a strong presumption of verity," any

"subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74, 97 S.Ct. 1621. Before Petitioner testified on his own behalf, he took the stand outside the presence of the jury and answered numerous questions, under oath, regarding his decision to testify. Trial Tr. at 1078-79. Petitioner's defense counsel conducted a waiver colloquy, where Petitioner confirmed that: he and his counsel had "spoken in the past about whether or not [Petitioner] should testify," he was aware of his right not to testify, and he understood that if he decided not to testify it could not be held against him. Id. Petitioner then acknowledged that it was "very much so" his choice to testify because he "decided to give an account of [his] story to the jury." Id. at 1079:15-18. Thus, Petitioner's own sworn statements completely bely his contention, now, that counsel compelled Petitioner to testify and told Petitioner that such testimony was necessary. Accordingly, given that Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity," and any "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal," Blackledge, 431 U.S. at 74, 97 S.Ct. 1621, the Court will **DENY** Petitioner's claim based on his decision to testify.

### 4. Substitute Counsel on Appeal

In his reply brief, Petitioner also argues that he received ineffective assistance of counsel based on counsel's actions on appeal. Applying a liberal construction to Petitioner's brief, he appears to assert that counsel provided ineffective assistance by: 1) failing to inform Petitioner of an alleged right to new counsel on appeal; 2) laboring under a conflict of interest because counsel was "working for them (meaning [the] government);" and 3) failing to withdraw as counsel. The Court rejects such claims.

### a. Failing to Inform Petitioner of Right to Substitute Counsel

▮ Petitioner alleges that he received ineffective assistance of counsel because "counsel did not tell [Petitioner] that he had the right to new counsel on appeal." Pet'r's Reply Br. at 7, ECF No. 401. Such claim fails under both of Strickland's prongs.

▮ Petitioner's claim based on counsel's alleged failure to inform Petitioner of his supposed right to be appointed substitute counsel fails under both prongs of Strickland because Petitioner had no such right. The Sixth Amendment requires that an indigent defendant have access to appointed counsel in his first direct appeal of right. See, e.g., Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (citing Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)). In addition, it is structural error for a court to deny a defendant who is able to retain counsel the right to counsel of his choosing. See United States v. Gonzalez–Lopez, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). However, "'the right to counsel of choice does not extend to defendants who require counsel to be appointed for them.'" United States v. Smith, 640 F.3d 580, 588 (4th Cir.2011) (quoting Gonzalez–Lopez, 548 U.S. at 151, 126 S.Ct. 2557). Indeed, a "defendant does not have an absolute right to substitution of counsel," and "[a]s a general rule, a defendant must show good cause in requesting a new appointed lawyer." United States v. Mullen, 32 F.3d 891, 895 (4th Cir.1994) (citing United States v. Gallop, 838 F.2d 105, 108 (4th Cir.1988)). Once a court has appointed counsel for an indigent defendant, the decision whether to grant a motion to withdraw or substitute counsel lies within the court's discretion. See Unit-

ed States v. Horton, 693 F.3d 463, 466-67 (4th Cir.2012) (citations omitted). Accordingly, as the preceding cases establish, once the Court appointed Mr. Short to represent Petitioner, notwithstanding his assertion to the contrary, he had no "right to new counsel on appeal." While Petitioner could have sought appointment of substitute counsel, such substitution would have required a showing of good cause. See Mullen, 32 F.3d at 895. Therefore, to the extent that Petitioner had no right to the appointment of substitute counsel, the Court concludes that Petitioner's allegations establish neither that counsel performed deficiently in failing to advise Petitioner of such non-existent right, nor that such failure was prejudicial.[5]

### b. Conflict of Interest

 Next, Petitioner appears to allege that his counsel was laboring under a conflict of interest while representing Petitioner on appeal. According to Petitioner, his attorney was "working for them (meaning [the] government)." Pet'r's Reply Br. at 7. The Court concludes that Petitioner's conflict-of-interest claim also fails.

 A defendant advancing a conflict-of-interest claim must show "that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 206 (4th Cir.2010) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Thus, Petitioner must show "'some real conflict of interest ... resulting from [the] representation ... before it can be said that [he] has been denied the effective assistance of

counsel.'" United States v. Atkinson, 565 F.2d 1283, 1284 (4th Cir.1977) (quoting United States v. Lovano, 420 F.2d 769, 772–73 (2d Cir.1970)); see also Sullivan, 446 U.S. at 350, 100 S.Ct. 1708 (holding that, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance").

Here, Petitioner asserts no facts whatsoever in support of his claim that there was a conflict of interest because counsel was "working for them (meaning [the] government)." Specifically, Petitioner fails to identify either "an actual conflict of interest" or "an adverse effect [of the alleged conflict] on counsel's performance." United States v. Tatum, 943 F.2d 370, 375–76 (4th Cir.1991) (citing Sullivan, 446 U.S. at 348, 100 S.Ct. 1708). Because Petitioner fails to identify any facts supporting his conclusory allegation that his counsel was working for the Government, Pet'r's Reply Br. at 7, he "fall[s] far short of carrying [his] burden of persuasion as to the two elements of the test outlined in Strickland." Turcotte, 405 F.3d at 537. Accordingly, the Court **DENIES** Petitioner's conflict-of-interest claim.

### c. Request to Withdraw

 Finally, with respect to substitute counsel, Petitioner appears to allege that he received ineffective assistance of counsel because counsel did not take any action in response to Petitioner's alleged request that he wanted different counsel on appeal. Petitioner asserts such claim, at best, implicitly in connection with his claim that counsel failed to inform him of an alleged

---

**5.** Petitioner also appears to challenge the Court's actions by alleging that "[t]he [C]ourt did not tell [Petitioner] that he had the right to counsel on appeal." To the extent that Petitioner asserts such claim as a basis to vacate his convictions, Petitioner has procedurally defaulted such claim by failing to

raise it in his appeal. See Mikalajunas, 186 F.3d at 492–93. Petitioner has demonstrated neither "cause" excusing such failure, nor "actual prejudice" resulting from the error alleged, see id. because, as noted above, Petitioner had no right to substitution of appointed counsel. Mullen, 32 F.3d at 895.

right to retain substitute counsel on appeal. To support his claim, Petitioner only presents the following one-sentence allegation: "[Petitioner] informed counsel through [a] translator that '[h]e don't [sic] want this counselor for appeal, he is working for them (meaning [the] government).'" Pet'r's Reply Br. at 7. Therefore, liberally construing his brief, Petitioner appears to contend that he received ineffective assistance of counsel because he requested that counsel file a motion for appointment of substitute counsel, but counsel failed to do so.

Assuming, arguendo, that counsel's failure to file motions to withdraw or to substitute counsel qualified as deficient performance under Strickland, Petitioner's claim fails because his allegations do not demonstrate prejudice. Petitioner's allegations do not sufficiently indicate that there is a reasonable probability that the outcome of Petitioner's appeal would have been different had Mr. Short sought to withdraw in response to Petitioner's alleged indication that he did not want Mr. Short to represent him on appeal. See Strickland, 466 U.S. at 693–94, 104 S.Ct. 2052. To reiterate, had counsel filed a motion to withdraw, the Court would have required Petitioner to show good cause for granting the motion. Mullen, 32 F.3d at 895. However, Petitioner's brief is devoid of any allegations of the sort of breakdown in communications, see Smith, 640 F.3d at 589, or conflict of interest that would provide a basis for the Court to find good cause for allowing counsel to withdraw. Likewise, Petitioner has presented no allegations from which the Court could conclude that there is a reasonable likelihood that Petitioner's appeal would have been successful had substitute counsel handled such appeal rather than Mr. Short. Therefore, the Court has no basis to conclude that it would have granted a motion to withdraw had counsel for Petitioner so moved or that granting such motion would

have created a reasonable probability that the outcome of Petitioner's appeal would have been different. Cf. Davis v. Terrell, No. 3:13–cv–42–RJC, 2014 WL 4407021, at *6–7 (W.D.N.C. Sept. 8, 2014) (rejecting as conclusory a § 2254 petitioner's claim that he received ineffective assistance of counsel because "[t]rial counsel failed to file a motion to withdraw as counsel despite Petitioner's request that he do so based on a conflict of interest"). Accordingly, the Court concludes that Petitioner's claim based on counsel's alleged failure to file motions to withdraw or substitute counsel fails because Petitioner's allegations do not establish prejudice under Strickland. The Court will **DENY** all of Petitioner's claims with respect to substitute counsel.

### 5. Interpreter Issues

 Petitioner also contends that he received ineffective assistance of counsel because counsel did nothing to resolve purported issues with the interpreters in this case. According to Petitioner, he "told the translator to tell counsel that he doesn't understand a lot of what [the] translator is saying, because they speak a different dialect." Pet'r's Reply Br. at 7-8. Counsel allegedly "did nothing to address this fact, or put it in the record." Id. at 8. More specifically, Petitioner alleges that the deficiency with the interpreters prevented counsel from learning that "the[re] was fishing equipment on the [mother ship]." Like his other claims of ineffective assistance of counsel, Petitioner's claim based on counsel's failure to address Petitioner's alleged partial inability to understand the interpreters also fails. Even assuming, arguendo, that any failure on counsel's part to address the alleged interpreter problems constituted deficient performance, Petitioner's claim fails under Strickland's prejudice prong.

Throughout the entirety of the proceedings in this case, at least one certified

Somali interpreter was present to assist Petitioner and his co-defendants in understanding the proceedings and testimony. Indeed, during Petitioner's trial—except during the jury's deliberations and when the jury returned its verdict—two certified Somali interpreters, Ayderus Ali and Abdulaziz M. Hussen, alternately shared such duties and were present to assist Petitioner and his co-defendants. See Trial Tr., ECF Nos. 248-53, 338, 355-56. Despite the assistance of such interpreters, Petitioner now contends that he told an interpreter to inform counsel that he could not understand a lot of what the interpreter was saying because they spoke in a different dialect and, therefore, that counsel's failure to address such issue qualifies as ineffective assistance of counsel.

Petitioner's conclusory assertion that counsel provided constitutionally deficient assistance by failing to address an alleged problem with Petitioner's ability to understand the certified Somali interpreters fails under Strickland. Aside from Petitioner's conclusory assertions that he instructed the interpreter to inform counsel that Petitioner and the interpreter spoke different dialects, that counsel did nothing to address such instruction, and that counsel, therefore, did not know that fishing equipment was present on the mother ship, Petitioner provides no allegations from which the Court might conclude that there is a reasonable probability that the outcome of Petitioner's trial might have been different if counsel had somehow addressed the alleged problems with the interpreters.[6] Thus, Petitioner's claim fails under Strickland's prejudice prong. See Turcotte, 405 F.3d at 537.

Moreover, the record evidence in this case contradicts Petitioner's current assertion that he could not understand the interpreters. At the beginning of the September 9, 2010 motion hearing, the Court questioned Mr. Ali and Mr. Hussen about the dialect that they were interpreting. See Mot. Hearing Tr. at 6:3-5, ECF No. 165. In response, Mr. Ali stated

it's Somali, just one language, and that's all it is. There is a few probably a dialect that is way, way far to the south of Somalia, and these defendants and us, Hussen and I, we speak the same dialect, so it is no issue[ ] in terms of the language.

Id. at 6:6-10. Thus, because Petitioner and the interpreters spoke the same dialect, the record belies Petitioner's post-hoc contention that he could not understand the dialect of the interpreters. Furthermore, the fact that the interpreters were present and that each one interpreted at multiple proceedings prior to the trial, yet Petitioner failed to ever once inform the Court of any language barrier through either interpreter, also undermines Petitioner's claim. Mr. Ali interpreted for Petitioner at his arraignment and a May 20, 2010 motion hearing. Both Messrs. Ali and Hussen in-

6. The Court notes that Petitioner's own reply appears to contradict his claim that he unsuccessfully attempted to inform counsel that fishing equipment was present on the mother ship. In his reply, Petitioner asserts that he told counsel that he was a fisherman, but counsel never asked whether fishing equipment or fish were present on the ship. Pet'r's Reply Br. at 6. Petitioner then asserts that "[s]ome people assume what is understood doesn't have to be said, as the Petitioner did." Id. Therefore, it appears that Petitioner never informed counsel that fish or fishing equip-

ment were present on the mother ship and, instead, simply assumed that such statement did not "have to be said." See id. Given that the only allegation of prejudice from the alleged interpreter problems consists of counsel's failure to appreciate that there was fishing equipment on the mother ship, see id. Petitioner's own indication that he never expressly informed counsel of such evidence suggests that Petitioner cannot show prejudice from any alleged problem with the interpreters or that counsel's performance in that regard was deficient.

terpreted for Petitioner at the motion hearing held from September 9-10, 2010. However, despite both interpreters' participation throughout the proceedings, Petitioner made no attempt to inform the Court of any problems understanding the interpreters at pre-trial hearings, trial, or sentencing. Such failure indicates that Petitioner's allegations fail to establish that counsel provided ineffective assistance based on Petitioner's alleged inability to understand the interpreter.[7] Finally, the fact that Petitioner was able to present cogent testimony in his own defense, using Mr. Hussen as an interpreter, suggests that he was fully able to understand the interpreters. See Trial Tr. at 1211-64. In short, Petitioner's conclusory assertions in his § 2255 motion that he could not understand the interpreters directly contradict all of the record evidence in this case. Therefore, the Court concludes that Petitioner's conclusory assertions are insufficient to establish a reasonable likelihood that the outcome of the proceedings would have been different had counsel attempted to address Petitioner's alleged inability to understand the interpreters' statements. The Court will **DENY** Petitioner's claim predicated on counsel's response to the alleged problem with the interpreters.

## 6. Assistance in Collateral Attack

Petitioner further alleges that he received ineffective assistance of counsel based on counsel's actions in connection with Petitioner's attempt to collaterally attack his conviction after he exhausted his direct appeal. More specifically, Petitioner asserts that counsel provided ineffective assistance by failing to timely inform Petitioner that the United States Supreme Court had denied Petitioner's petition for a writ of certiorari and by failing to transmit jury instructions to Petitioner to assist him in pursuing his habeas petition. However, "a petitioner has no Sixth Amendment right to counsel in order to mount a collateral challenge to his conviction." United States v. Williamson, 706 F.3d 405, 416 (4th Cir.2013) (citing Kitchen v. United States, 227 F.3d 1014, 1019 (7th Cir.2000)). Accordingly, given that Petitioner had no constitutional right to the assistance of counsel in preparing his habeas petition, counsel's actions following the United States Supreme Court's denial of Petitioner's petition for a writ of certiorari provide no basis for Petitioner to attack his conviction based on ineffective assistance of counsel.[8] Therefore, the Court will **DENY** Petitioner's claims with respect to counsel's actions after the Supreme Court de-

---

7. Cf. Yu Tian Li v. United States, 648 F.3d 524, 531–32 (7th Cir.2011) (citation omitted) (upholding a district court's denial of an ineffective assistance of counsel claim based on a petitioner's alleged inability to understand proceedings, in part, because the petitioner "participated in the trial and never notified the court of any problems understanding the proceedings or his counsel."); Gallo–Vazquez v. United States, 402 F.3d 793, 799 n. 1 (7th Cir.2005) (noting that a "petitioner's failure to complain earlier about problem that would have been obvious to him—an almost complete a inability to communicate with his lawyer—calls into question whether such a problem really existed"); Sarder v. United States, Nos. 11 Civ. 7872(NRB), S1 09 Crim. 948

(NRB), 2012 WL 1314159, at \*5–8 (S.D.N.Y. Apr. 17, 2012) (unpublished).

8. The Court notes that Petitioner has sought equitable tolling based on counsel's alleged failure to timely inform Petitioner of the denial of his petition for a writ of certiorari. As noted above, the Government has conceded that such tolling is appropriate. Thus, such concession provides Petitioner with a basis to present his other claims of ineffective assistance of counsel in the instant petition. Nevertheless, any action, or lack thereof, on counsel's part following Petitioner's direct appeal does not provide Petitioner with a substantive basis to attack his conviction. See Williamson, 706 F.3d at 416 (citation omitted).

nied Petitioner's petition for a writ of certiorari.

## B. Sufficiency of the Evidence

In addition to his ineffective assistance of counsel claims, Petitioner appears to contest the sufficiency of the evidence against him with respect to his conspiracy convictions. In particular, Petitioner asserts that "[t]here was no overt act for [Petitioner] shown in his trial." Pet'r's Reply Br. at 5. However, Petitioner has procedurally defaulted such claim by failing to raise it on direct appeal. Thus, Petitioner must demonstrate both cause and prejudice for the Court to consider such claim. Mikalajunas, 186 F.3d at 492–93. Petitioner has shown neither. With respect to cause, Petitioner has submitted no allegations that his procedural default "turn[s] on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Pettiford, 612 F.3d at 280. As to prejudice, Petitioner's allegations fall well short of demonstrating actual prejudice from any deficiency in the evidence against him on the conspiracy charges. Therefore, the Court will **DISMISS** Petitioner's claim based on the sufficiency of the evidence against him because Petitioner has procedurally defaulted such claim.

In the alternative, the Court **DENIES** Petitioner's sufficiency of the evidence claim on the merits because the evidence against Petitioner was more than sufficient to support the jury's verdict of guilty with respect to the conspiracy charges against Petitioner. See supra Part III.A.2.c. Contrary to Petitioner's assertion, based on Petitioner's confession to Agent Knox that Petitioner departed Somalia "with the intention of pirating a merchant vessel" and that his role was "to navigate the motor skiff," Trial Tr. at 887-88, ECF No. 251, a reasonable finder of fact could conclude that Petitioner committed an over act in furtherance of the conspiracies charged against him. Thus, Petitioner's sufficiency of the evidence claim also fails on its merits.

## C. Request for Counsel

In his § 2255 motion, Petitioner also requests that the Court appoint counsel to assist him in these habeas proceedings. The Court finds that appointment of counsel is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief sought in his § 2255 motion. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 6, 8(a). Accordingly, the Court **DISMISSES AS MOOT** Petitioner's motion for appointment of counsel.

## IV. CONCLUSION

For the reasons discussed above, with respect to Petitioner's ineffective assistance of counsel claims, the Court **DENIES** Petitioner's § 2255 Motion, ECF No. 375. With respect to Petitioner's sufficiency of the evidence claim, the Court **DISMISSES** Petitioner's motion as procedurally defaulted and, in the alternative, **DENIES** such claim on its merits. The Court **DISMISSES AS MOOT** Petitioner's motion for appointment of counsel.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller–El v. Cockrell, 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Petitioner is **ADVISED** that, because the Court has **DENIED** a certificate of appealability, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of

appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, James E. Short, and the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**